# OCTOBER, 1938.

THEODORE C. HAYNIE AND ANNA HAYNIE, RESPONDENTS, v. DONALD JONES ET AL., APPELLANTS.—127 S. W. (2d) 105.

Kansas City Court of Appeals.   January 30, 1939.

*Sprinkle & Knowles* for appellant.

*Louis Goessy, Cowgill & Popham* and *Guy W. Green, Jr.,* for respondents.

952

BLAND, J.—This is an action for wrongful death. Plaintiffs recovered a verdict and judgment in the sum of $6500 and the defendant, Donald Jones, has appealed.

The plaintiffs are the parents of one Burton Haynie, who was killed on March 31, 1937. He met his death as a result of being struck by an automobile a short distance south of the city limits of Kansas City and while walking on a public highway known as Wornall Road. Deceased was accompanied by his brother and another boy walking south. The automobile was proceeding in the same direction. The casualty happened about 10:30 P. M. The automobile in question belonged to one Guy W. Jones, who was made a party defendant. At the close of plaintiffs' case the cause was dismissed as to him and proceeded as to defendants Donald Jones and Allen Mattingly, against whom the judgment was rendered. Donald Jones, alone, has appealed.

Guy W. Jones, the father of Donald Jones (Donald Jones is hereinafter called the defendant), permitted the latter to take the former's car on the day in question. The latter drove the car to the separate homes of three of his friends and they entered the car as his guests. At the time of the collision a young man and a young lady occupied the rear seat. Defendant and Allen Mattingly occupied the front seat. The four (all minors) were out for a pleasure drive with no definite destination in view. A short time before the casualty defendant turned over the wheel of the automobile to Allen Mattingly, the former sitting to the right of the latter in the front seat. Defendant was eighteen and Mattingly seventeen years of age.

Defendant's testimony tends to show that just before the casualty an automobile, approaching from the south with bright lights, blinded the driver, Mattingly, as well as the others in the Jones car; that deceased was not seen until the northbound car passed; that at that time the Jones' car was swerved as far as it could be turned to the left but it was impossible to avoid striking the deceased. Defendant's evidence also shows that, on account of the blinding lights on the approaching northbound car, defendant told Mattingly to "flick

your lights.'' This was for the purpose of indicating to the driver of the approaching car that his lights were blinding the occupants of the Jones car, so that the driver of the former car would dim his lights or ''put them down.'' Defendant testified that in driving along he glanced over to the side of the car to see that Mattingly did not get off of the road to the right; that he was watching ''because it was my car and I would naturally be interested in it.'' After the casualty the Jones car ran forty-five or fifty feet before it stopped. Defendant then ''instructed'' Mattingly to drive the car ''on down where he could park'' which was done. Defendant then got out of the car and boarded another which went north in order to reach deceased, who was yet alive. Deceased was placed in the car and taken to the hospital and defendant told Mattingly to follow in the Jones car.

Plaintiffs' case was submitted both upon the humanitarian doctrine and primary negligence.

Defendant insists that his instruction in the nature of a demurrer to the evidence should have been given, for the reason that he was a minor and, although he may have had the right of control over the operation of the automobile, at the time of the casualty, he was not driving the car and can be held only for his own tort and not for the negligence of Mattingly; that he could be held for the negligence of Mattingly only on the theory of *respondeat superior* and that defendant, being a minor, could not appoint an agent. [See 31 C. J., pp. 1090, 1091; Hodge v. Feiner, 90 S. W. (2d) 90.]

Plaintiffs' theory of recovery is not that Mattingly was the agent of the defendant, but that defendant, himself, in legal contemplation, was the driver of the car; that Mattingly was merely the instrument through which the defendant actually drove the car, as defendant was in possession of the car and had it in his charge and custody and had the right of direction and control over Mattingly at all times; that defendant was actually exercising such control, as he instructed Mattingly to flick his lights just prior to the collision and was watching the road to see that Mattingly did not go off of it to the right; that both defendant and Mattingly were driving the car.

Defendant insists, in substance, that this theory of the plaintiffs is nothing more than an effort to impute the negligence of Mattingly to the defendant, or, to recover on the theory of a joint enterprise, both of which theories, defendant insists, are applicable to contributory negligence only and, in addition, the latter theory (joint enterprise) is based upon the relationship of principal and agent. In Hodge v. Feiner, *supra*, l. c. 92, 93, it was stated: ''The doctrine of imputed negligence has particular application to contributory negligence. [45 C. J. 1019, sec. 573.]'' It is stated by Corpus Juris that ''The doctrine of joint enterprise is particular to contributory negligence.'' [See 45 C. J., p. 1021.] However, the doctrine

of joint enterprise, at least in two cases in this State, has been applied to a non-driver of an automobile, riding therein, in a suit for damages against him by one not an occupant of the car. [See Roland v. Anderson, 282 S. W. 752; Counts v. Thomas, 63 S. W. (2d) 416, 419.] Tyler on Infancy and Coverture (2 Ed.), p. 186, states that an infant is liable for his tortious acts if committed ''by the infant *himself, or under his immediate view, or by his direction or authority.*''

When persons are engaged in a common or joint enterprise and *each has an equal right to direct and control the conduct of the others* with respect to the acts or omissions which contributed to cause the injury, the negligence of one of such persons is said to be imputed to each of the others. (Italics ours.) [See 45 C. J., p. 1020.] No doubt, the doctrine of joint enterprise, as just referred to, no other facts appearing, is founded upon the theory of principal and agent. [See Smith v. Wells, 31 S. W. (2d) 1014, 1025.]

This case is similar, in some of its facts, to that of McKerall et al. v. St. Louis San-Francisco Ry. Co., 257 S. W. 166. There the father permitted his daughter, a minor, to take his car. The daughter riding in the car with another, whom she had permitted to drive it, was killed at a railroad crossing by a train. It was there held that the *contributory* negligence of the driver of the car was to be imputed to the daughter. The court saying: ''Miss Robertson was driving by the permission of the deceased, and therefore the car at the time, in contemplation of law, was under the direction of deceased. It is our opinion that the negligence, if any, of Miss Robertson was imputable to deceased.'' It will be noted that that case involved contributory negligence. [See, also, Hodge v. Feiner, *supra.*]

We are not called upon to say whether imputed negligence, including that arising in joint enterprise cases, has *sole* application to contributory negligence, for the reason we do not think that the plaintiffs are called upon to rely upon any theory of imputed negligence in order to fix liability upon the defendant in this case.

We are of the opinion that plaintiffs are entitled to recover upon the theory that, as defendant had the sole right of control and direction of the car at the time in question, and being present in the front seat and assisting in and directing its driving, he was using Mattingly as an instrumentality of his assisting him in the driving and operation of the car and that he and Mattingly were jointly driving it, and that defendant made no effort to avoid the collision with the deceased. There was evidence tending to show these facts.

''The rule is well settled, both in England and in the United States, that an act done by a person in the presence of another, and by his direction or with his consent, as the signing or execution of a sealed or written instrument, for example, is not regarded as the act of an

agent, but is the direct act of the person by whose direction it is done." [21 R. C. L., p. 817, sec. 1.]

There are numerous cases in this country, though not exactly in point, involving a servant, who in performing work for his master, with no authority to employ an assistant, but who calls in one to help him in his work and injury is negligently done by such person to the third person in the presence of the servant. In those cases it is held that the act of the invited person, or the one called in by the servant to assist him, is the act of the servant and the master is liable. This is not on the theory of any relationship of *respondeat superior,* either as between the master and the invited person or the latter and the servant, but on the theory that the act of the invited person is, in legal contemplation, the act of the servant as though he had performed it himself.

In Hollidge v. Duncan, 199 Mass. 121, the servant of the owner of a cart, which became out of order, asked a bystander to assist him in trying to fix it and, while so doing, the bystander committed an act resulting in plaintiff's injury. The court likened the bystander to a tool or an appliance which the servant was using, stating, l. c. 123: "The fact that the tool or appliance was an intelligent human being does not effect the matter any more than the fact that another person held the reins did in Booth v. Mister, 7 C. & P. 66." In Wellman v. Miner, 44 N. Y. S. 417, 418, the person invited by the servant was referred to as the "instrument" of the servant.

"If a servant in charge of his master's carriage should take a stranger with him into the driver's seat, hand him the reins and tell him to drive at a run and an injury happen in consequence of the speed, the master must answer for the damages, for the negligence was that of his servant. But not so if the servant had quit the carriage and substituted the stranger in charge, generally, in his stead, without the knowledge of the master. For if an injury happen it is not the act of the servant for whom only is the master liable." [James v. Muehlebach, 34 Mo. App. 512, 518.] In that case the driver of defendant's beer wagon took an acquaintance upon the wagon and in readjusting the load, a number of kegs were thrown off, one of them, thrown off by the acquaintance, striking and injuring the plaintiff. It was held that, while the acquaintance was not an agent of the employer of the driver of the wagon, the act of the acquaintance was the act of the driver and, in legal contemplation, the situation was the same as though the driver had thrown off the keg himself. [See, also, Slothower v. Clark, 191 Mo. App. 105; Blumfield v. Meyer-Schmidt Groc. Co., 230 S. W. 132.]

These cases are not founded upon the thought that one who assists the servant becomes thereby a servant of such servant's master. [See Thyssen v. Ice & Storage Co., 134 Iowa, 749, 752.] And it would, indeed, be beating the devil around the bush to say that,

956

notwithstanding there is no such relationship between the person assisting the servant and the servant's master, that the master is liable on the theory that the person assisting the servant is the latter's *agent or servant* and, consequently, the act of the assistant is the act of the servant.

We think that the demurrer to the evidence was properly overruled.

We have examined the cases cited by the defendant and find them not in point. In Hodge v. Feiner, *supra*, it is stated that plaintiff sought to recover on the theory of agency between the driver of the car and the defendant, Feiner, a minor, and, the court in discussing the law of the case, said l. c. 91: *"Feiner was not present at the time of the collision* and for plaintiff to hold Feiner liable, it was incumbent upon her to prove that Williams, the driver of the car, was the agent of Feiner and engaged on an errand in Feiner's behalf" (italics ours) and l. c. 92: "In the Hodge case, now before us, a minor was sought to be held responsible in tort solely on the doctrine of *respondeat superior, when the tort was not committed in the minor's presence."* (Italics ours.) This case does not sustain defendant's contention that because the minor is not liable where the tort is not committed in his presence he is not liable, under the circumstances of this case, where it was committed in his presence. The distinction is properly made in James v. Muehlebach, *supra*.

On behalf of plaintiff the court gave Instructions Nos. 1, 2 and 4. Instruction No. 1 reads as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant Donald Jones was present in said automobile at the time and place in question, if so, and if you further find that the defendant Donald Jones had said car his possession, charge and custody, and had the right of direction and control over the driver of said car at said time and place, if so, that the acts and omissions, if any, of the defendant, Mattingly, would be the acts and omissions, if any, of Donald Jones, and if you further find and believe from the evidence that defendant Mattingly was negligent at said time and place as elsewhere in these instructions defined, and said negligence of Mattingly, if any, would also be the negligence of defendant Donald Jones, and this would be true whether defendant Donald Jones actually exercised any direction or control over said car or not."

Instruction No. 2 (on primary negligence) told the jury, among other things that: "You are further instructed that if you believe from the evidence that at the time and place in question the defendant Mattingly was at the wheel, and that the defendant Donald Jones was personally present and had said car in his possession, charge and custody, if so, and had the right of direction and control over the defendant Mattingly and said car (whether defendant Don-

ald Jones exercised the same or not) then his, Mattingly's, acts and omissions, if any, and Mattingly's negligence, if any, would be the acts, omission and negligence, if any of Donald Jones. If you further believe the said defendants as said automobile approached the deceased at the point in question, *both operated and drove said automobile,* if so, at a high, dangerous and excessive speed under the conditions then and there existing, or failed to give timely warning of the movements of said automobile, if so, or failed to keep a vigilant lookout laterally and ahead, if so, and were thereby negligent, if so, and if you further find that as a direct result thereof said automobile struck the deceased,'' etc., then their verdict should be against both of the defendants. (Italics ours.)

Instruction No. 4 told the jury:

''The court instructs the jury that if you believe from the evidence that as said automobile approached and neared the point where deceased was, that deceased was in a position of imminent peril and danger from being struck by said automobile and was unaware of its approach and said danger, if any, and if you further believe from the evidence that the defendants Donald Jones and Mattingly knew, or by the exercise of the highest degree of care could have known all the above facts, if you so find them to be the facts, in time thereafter by the use of the highest degree of care and the means at their command, and with safety to themselves and said automobile and its other occupants and others, to have swerved said automobile, or to have sounded a warning signal and thereby have prevented deceased being struck, if you so find, and that the defendants Donald Jones and Mattingly failed to exercise the highest degree of care so to do, if so, and thereby in the aforesaid respects were negligent, if so, and that as a direct result thereof deceased was struck by said car and thereby fatally injured, if you so find, your verdict must then be in favor of the plaintiffs and against the defendants Donald Jones and Allen Mattingly, provided you also find and believe from the evidence that Mattingly was at said time and place under the direction and control of, and in the presence of the defendant Donald Jones, or that Donald Jones had the right of direction over Mattingly, if so, and that Jones had the automobile in question in his care and custody, if so, and the *same was then being driven and operated by both of said defendants.''* (Italics ours.)

Defendant does not complain of the giving of Instruction No. 2, nor Instruction No. 4, except as to a matter not now in controversy, but insists that the court erred in the giving of Instruction No. 1. The evidence is undisputed, in this case, that the car was in the possession and custody of the defendant and that he had the right of direction and control thereof, and further, he was actually assisting in and directing the operation of it, at least in part. (The jury could infer in whole, but that is another matter to be alluded to

later.)  This evidence was brought out by defendant by his own testimony and that of his witnesses.  Under such facts, if we may not hold, as a matter of law, that the acts of Mattingly were those of the defendant, nevertheless, the instruction was not materially erroneous (when read in the light of the other instructions) because the jury was nowhere told that the circumstances submitted in Instruction No. 1 should result in a recovery for plaintiffs.  In other words, it did not direct a verdict and in those instructions (Nos. 2 and 4) directing a verdict (No. 2 submitting the same matter as is contained in No. 1 and facts in addition), the jury was required to find that both Mattingly and defendant were driving the car. The giving of Instruction No. 1, standing alone, would probably have been erroneous, unless the mere fact that defendant had the car in his possession, charge and custody and had the right of direction and control over the driver, made him responsible for the acts of the driver (a matter we need not decide) but the instructions must be read as a whole and if Instruction No. 1, standing alone, can be said to be erroneous in the respects noted and it is not clear from that instruction whether it meant that if the jury found that defendant had the car in his possession, charge and custody, etc., he would be liable although he did not actually exercise any direction or control over the car, the matter was made perfectly plain in instructions Nos. 2 and 4 for there the jury were expressly required to find that defendant, as well as Mattingly, was driving the car.

Taking Instructions No. 1 and 2 together the jury would understand that if defendant had the car in his possession, charge and control and had the right of direction and control over Mattingly, then the acts and omissions of Mattingly would be the acts and omissions of defendant, whether defendant actually exercised any direction or control over Mattingly or the car, provided the car was being driven by both of them, defendant's part of the driving consisting of assisting Mattingly.

Instruction No. 1 is a general statement of the law as to defendant's liability for the acts of Mattingly, telling the jury that if the defendant had the car in his possession, charge and control, etc., then Mattingly's acts were his acts.  It is well established that error in an instruction, for stating too broadly a proposition of law, is cured by a submission of sufficient facts to authorize a recovery. [Brolin v. City of Independence, 114 S. W. (2d) 199; Drake v. K. C. Pub. Serv. Co., 333 Mo. 520; Hoelzel v. Railway Co., 337 Mo. 61, 72; Bales v. K. C. Pub. Serv. Co., 328 Mo. 171; Hutson v. Mo. Stair Co., 296 S. W. 216, 218.]

Reading the instructions together they are not erroneous for it is well settled that an infant is liable for a joint tort committed by himself and another under circumstances similar to those present in

this case, where the liability is not one, the essence of which, is a breach of contract. [See Sikes v. Johnson, 16 Mass. 389; Kilpatrick v. Hall, 67 Me. 543.] "Where a tort grows out of a contract, a person incapable of making the contract, such as an infant or married woman, is not liable. In the absence of some relation existing so as to render the doctrine of *respondeat superior,* or the maxim, *Qui facit per alium facit per se,* applicable, or *unless a person participates in or ratifies* a tortious act, he is not liable for the act or omission of another, or as a joint tort-feasor. As a general rule one who counsels, advises, abets, or assists in the commission by another of an actionable wrong is responsible to the injured party for the entire loss or damage." (Italics ours.) [62 C. J., pp. 1128, 1129.] However, an infant cannot be made a trespasser by relation though the ratification of a wrongful act which another has assumed to do on his behalf, but without his knowledge. [Burnham v. Seaverns, 101 Mass. 360; 1 Cooley on Torts (4 Ed.), p. 208.] "*Such tortious acts must be committed by the infant himself, or under his immediate view, or by his direction or authority. He cannot be a trespasser by prior or subsequent assent, but on own act.*" (Italics ours.) [Tyler on Infancy and Coverture (2 Ed.), p. 186.] "The rule is well settled that joint liability exists where the wrong is done by concert of action and common intent and purpose, provided that the act of such person was an efficient cause, contributing to the injury. Proof of a conspiracy is not necessary. The degree of culpability of each of the wrongdoers cannot be compared; nor will their liability be affected by the relative degree of negligence or of the care required." [62 C. J., pp. 1135, 1136.]

It is insisted that the court erred in permitting plaintiffs to amend their petition during the trial and near the close of plaintiffs' case. The petition, before the amendment, alleged that the car was being driven by all three of the defendants and their agents and, further, that the defendants Donald Jones and Allen Mattingly were engaged in a joint enterprise or mission and were agents and servants of each other with equal right of control over the direction and operation of the car and were in the presence of each other and acting as the agents and servants of the defendant, Guy Jones, and that each of said defendants was acting for the other and bound by the acts and omissions of the other. The acts of negligence relied upon for a recovery were charged as having been committed by all of the defendants.

The amendment to the petition was made by the addition of the following: "And defendant, Donald Jones, had custody and right of control and direction over said car and its operation and over the driver defendant, Allen Mattingly."

The allegations of the petition, before the amendment, were broad enough to authorize proof that all of the defendants were driving

the car either themselves or through their agents, or one or more as principals and others through an agent or agents and that they were joint feasors. It was also broad enough to admit of proof that what Donald Jones and Allen Mattingly did was as agents of each other on the theory of joint enterprise.

The effect of the amendment was to change the theory of joint enterprise and agency as between Donald Jones and Allen Mattingly, to the theory that Mattingly, in his connection with the driving of the car, was acting as an instrumentality of Donald Jones. The a- mended petition remained broad enough to allow proof of the theory that Donald Jones and Allen Mattingly were driving the car as principals and that they were joint tort-feasors or, in view of the amendment, to admit of proof that Donald Jones was re- sponsible for the acts of Allen Mattingly on the theory that the latter was an instrumentality through which the former was driving the car, or to admit of proof based on a combination of both theories.

Defendant objected to the amendment, excepted to the action of the court in permitting it and asked for a continuance, filing an affidavit of surprise. The affidavit stated that the amendment con- stituted a departure and, further, we may assume, it stated circum- stances, if true, constituting surprise to the defendant. We think that the claim was not substantially changed by the amendment. Therefore, there was no departure. [Mo. Pac. Railroad v. Clark, 268 S. W. 97; Smith v. Harbison-Walker, etc., 100 S. W. (2d) 909.] It is quite apparent that the court committed no reversible error by refusing a continuance, for the reason that defendant, by his own witnesses, brought out facts proving the allegations contained in the amendment, and there could have been no dispute concerning them.

It is insisted that the court erred in giving plaintiffs' Instruction No. 4. This instruction is on the humanitarian theory and told the jury, among other things, as above shown, that if it found ''that as said automobile approached and neared the point where deceased was, that deceased was in a position of imminent peril and danger from being struck by said automobile and was unaware of its ap- proach and said danger'' and that defendants could have known all of said facts in time to have swerved the automobile or sounded a warning and that as a direct result thereof deceased was killed, their verdict must be for the plaintiffs.

It is insisted that in using the words ''approached and neared the point where deceased was'' as fixing the place where deceased was in a position of imminent peril and oblivious thereto, the instruction was erroneous because: ''Necessarily, the deceased was not in a position of imminent peril when the automobile was several hundred feet or several blocks away from the place of the accident;'' that the words used in the instruction ''are highly indefinite. They are

subject to various individual constructions" as to "the distance within which imminent peril existed." We find no merit in this contention of the defendant. The instruction not only has the jury find that the deceased was in a position of imminent peril, as the automobile approached and "neared" the place where he was struck, but that he was oblivious. We think that the jury could not get the impression, under this instruction, that when the automobile was several hundred feet or several blocks away from the point of the accident, deceased was in imminent peril. [See Brown v. Callicotte, 73 S. W. (2d) 190, 193, 194; Hein v. Peabody Coal Co., 85 S. W. (2d) 604.]

In Smithers v. Barker, 111 S. W. (2d) 47, cited by the defendant, the instruction was held erroneous in permitting the jury to find that defendant, while driving his automobile, was in peril when he was at, upon and crossing the intersection. The court held, under plaintiff's own evidence, that he was not in peril while entering into and upon the intersection, because after entering into and upon said intersection he was still in a place in which he could and did stop in safety.

In Buehler v. Festus Merc. Co., 119 S. W. (2d) 961, cited by defendant, the instruction was held erroneous because it permitted a finding of imminent peril when plaintiff was approaching and in a position of imminent peril. Obliviousness was not hypothesized in the instruction. The instruction, in the case at bar, submits obliviousness. In fact, the undisputed evidence shows that deceased was struck from the rear and there was nothing to show that he knew of the near approach of the automobile.

It is insisted that the court erred in refusing to sustain appellant's objections to parts of the closing argument of the attorney for plaintiffs, which it is claimed, was outside of the record and was for the purpose of inciting the prejudice and passion of the jury.

We find that no such point is preserved in defendant's motion for a new trial. The only matter in reference to the argument therein mentioned is the charge that the court erred "in refusing *to discharge the jury* on motion of this defendant during the closing argument of attorney for plaintiffs," etc. (Italics ours.) The point now urged, not having been saved in the motion for a new trial, is not available to defendant. [Beebe v. Kansas City, 34 S. W. (2d) 57, 58.]

It is insisted that the verdict is excessive. The facts in this connection show that deceased was thirteen years of age at the time of his death; that he had been living with his parents; that he was in perfect health; that during school he "had a steady job," . . . "after school hours of an evening," earning $2 per week, "plus extra money for errands;" that in the winter time he had regular customers whose sidewalks and driveways he "shoveled snow off of;" that he and his brother were jointly operating a lawn service from

which they earned $135 per month; that they divided their earnings between them; that deceased turned over to his father his portion of the money. The testimony further shows that deceased was "very attentive at home;" that he would run errands or "do anything else;" that "whatever he made he brought home;" that his grades in school were "near perfect" and he was outstanding in "Natural History and Nature Science." The testimony shows that the funeral and burial expenses of the deceased were in the neighborhood of $560.

We cannot say, under such circumstances, that the verdict is so large as to justify us in interfering with it. [See Ponticello v. Liliensick, 83 S. W. (2d) 150.]

The judgment is affirmed. All concur.