256 S.W.2d 273 (1953)
FOLLUO
v.
GRAY et al.
No. 28611.
St. Louis Court of Appeals. Missouri.
March 17, 1953.
*274 Wilbur C. Schwartz, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for appellants.
Ward Fickie, St. Louis, Biggs, Curtis, Biggs & Crossen, St. Louis, of counsel, for respondent.
ANDERSON, Judge.
This is an action by Charles M. Folluo, as plaintiff, against William Gray, Jr., and Mohawk Motor Lines, Inc., as defendants, to recover damages for personal injuries, and damages to plaintiff's automobile, alleged to have been sustained on August 25, 1950, as the result of a collision at the intersection of Channing Avenue and Delmar Boulevard in the City of St. Louis, between an automobile driven by plaintiff and a truck operated on behalf of defendant Mohawk Motor Lines, Inc., by defendant William Gray, Jr. There was a verdict and judgment for $7,000 in favor of plaintiff against both defendants. Defendants have appealed.
Plaintiff's petition alleged that on August 25, 1950, plaintiff was driving his automobile south on Channing Avenue in St. Louis, Missouri, at about 8:30 a. m., and that defendants' truck, being driven eastwardly on Delmar Boulevard by defendant William Gray, Jr., collided with plaintiff's automobile at the intersection of Channing Avenue and Delmar Boulevard, causing plaintiff to sustain personal injuries and damage to his automobile. The collision is alleged to have resulted from the negligence of the defendants in that they "negligently operated the truck by driving into the intersection in disregard of other traffic, by failing to maintain a lookout for pedestrians and autos, by failing to maintain control of his vehicle, and by operating the truck at an excessive speed under the existing conditions of traffic and surface." Humanitarian negligence on the part of defendants, based on failure to stop, slacken, swerve or warn, was also alleged. The petition further alleged that plaintiff suffered a fracture of the right wrist and left collarbone, bruises, cuts and sprains about the upper body and chest, and shock and injury to the nervous system. It was also alleged that plaintiff's automobile was damaged beyond repair. The prayer of the petition was for damages in the sum of $10,000.
By their answer, defendants specifically denied the negligence charged and the allegations that plaintiff suffered the injuries alleged. It was further averred that if plaintiff suffered injuries and damages on the occasion in question, the same were caused by plaintiff's own negligence in that he drove his automobile at a high and dangerous rate of speed under the circumstances then and there existing, and failed to keep a proper lookout for traffic moving eastwardly on Delmar Boulevard; that he negligently failed to swerve his automobile or stop or slacken its speed so as to avoid the collision, and that he negligently failed to bring his automobile to a stop before entering Delmar Boulevard, in disregard of an electric signal, and in violation of the law under which said signal had been erected.
Plaintiff, a salesman sixty-one years of age, was employed by the MacNulty Notion Company. In the course of his employment he operated an automobile for the purpose of calling on confectionery stores and small grocery stores. Channing Avenue runs north and south in the City of St. Louis, and Delmar Boulevard is a major thoroughfare running east and west, and intersects Channing Avenue at right angles. Delmar Boulevard is sixty feet wide.
Plaintiff was operating his own automobile southwardly on Channing Avenue at about 8:30 in the morning on August 25, 1950, on a clear dry day. The pavement was dry at the time. After entering the intersection of Channing and Delmar, plaintiff's automobile collided with a truck which was at the time operated eastwardly on Delmar
*275 Boulevard by defendant William Gray, Jr. The truck was described as a large stake truck, painted green. Defendant Gray was driving the truck from the Hall Drive-it-Yourself Company, from which it had been rented that morning by the defendant Mohawk Motor Lines, Inc. Traffic eastbound on Delmar Boulevard at 8:30 a. m. is admittedly very heavy. Delmar Boulevard is designated as a major street by city ordinance, which requires all vehicles proceeding on intersecting streets to stop before crossing such major street.
Plaintiff testified that when he reached the north curb line of Delmar he brought his car to a stop and looked for traffic on Delmar. He testified:
"I stopped right at the curb.
"Q. * * * and then you saw your way clear to start on across the street? A. That is right. * * * when I stopped I looked, I saw automobiles, but I had a chance to get through there. * * * After I got started as soon as I started out I seen cars coming, but I had plenty of space to get through.

* * * * * *
"Q. Where did you see cars coming from, coming from the east going west? A. From both sides of me, maybe a half block away.

* * * * * *
"Q. Your nearest automobile to you you saw going west when you looked east is half a block away? A. Well, it was in the distance, I don't just say half a block * * *. Anyway, I had room to get through."
Plaintiff also testified that when his car was at the north curb he looked west, and that "there were automobiles coming but I don't know the make of the car, whether it was a Studebaker or a Plymouth, or what it was, there was an object coming that way but I thought I could make it through, so I went on through." Plaintiff then started his car and proceeded across the intersection at about eight or ten miles per hour. Plaintiff did not look either to the right or left after entering the intersection. He looked ahead, "because people could have been walking there." Plaintiff admitted that if he had looked to his right he would have seen defendants' truck before it hit him.
Plaintiff further testified that the front of his car had almost reached the south curb line of Delmar when the collision occurred. Immediately prior to the collision plaintiff had shifted into second gear. The front bumper of the truck struck the right side of the automobile and pushed plaintiff's car about a foot to the east before the vehicles stopped. Plaintiff was thrown from his automobile to the street. Plaintiff testified he never saw defendants' truck at any time before it struck his automobile. No warning was sounded by the driver of either vehicle prior to the collision.
Defendant Gray testified that he first saw plaintiff's automobile when it was seventy-five feet, or three or four car lengths, north of the intersection, and that it was traveling between twenty and thirty miles per hour. Defendants' truck at that time, according to the testimony of defendant Gray, was approximately thirty-five or forty feet west of Channing Avenue and was traveling at a speed of fifteen or twenty miles an hour. Defendant Gray further testified that he relied on plaintiff making a stop at Delmar, but observed out of the corner of his eye that plaintiff did not stop at the stop sign. He further testified that after entering the intersection plaintiff appeared to be veering to his left as though he were going to turn left into Delmar. At that time there was a taxicab moving north across the intersection, and another taxicab turning east into Delmar from Channing. Defendant Gray testified: "Well, it seemed to me that when I saw him (plaintiff) he was veering to the left, so I figured he was going to make a left turn and there was still another taxicab there turning to the right, so I started to slow down for him and I saw this black car directly in front of me, and I applied my brakes fully." Gray also stated that he swerved to his right about five feet but was unable to avoid the collision. Defendants' *276 truck struck the center of plaintiff's automobile. Plaintiff's car moved about two or three feet after the impact.
Plaintiff sustained a fracture of his left collarbone, a fracture of his left wrist, contusions over his left knee, and abrasions on the tip of his left ear. The fracture of the wrist healed perfectly in about three weeks. The collarbone healed without any impairment of use, though a slight shortening resulted. Plaintiff's medical expenses totaled $100. His automobile was a total wreck. Plaintiff was unable to work for two months, and did not return to his former employment because he did not have an automobile. He ultimately secured other employment at a greatly reduced wage.
Plaintiff requested, and the court gave, instructions submitting both primary negligence and the issue of negligence under the humanitarian doctrine. The instructions submitting primary negligence predicated liability upon a finding that defendant Gray failed to stop his truck upon the first appearance of danger, and a finding that defendant Gray failed to sound a warning of his approach at the time and place in question. The instruction submitting the issue of humanitarian negligence authorized a verdict for plaintiff upon a finding that defendant Gray failed to stop his truck, slacken the speed thereof, or swerve the same after he saw or could have seen plaintiff in a position of imminent peril. In addition, there was a charge given by which the jury were instructed that if they found "that the plaintiff's car was collided with by the truck driven by defendant William B. Gray, Jr., as a direct result of the negligence of defendant William B. Gray, Jr., the jury must return a verdict against defendants Mohawk Motor Lines Inc., and William B. Gray, Jr." In finding for plaintiff under this instruction, the jury were not restricted to the specific negligence pleaded.
Appellants assign as error the giving of Instructions Nos. 1 and 2. Said instructions submitted the primary negligence pleaded, that is, failure on the part of defendant Gray to stop his truck upon the first appearance of danger, and failure to sound a warning of his approach at the time and place in question. Appellants contend that said instructions should not have been given because plaintiff's evidence convicts him of contributory negligence as a matter of law. We feel compelled to sustain this contention.
While it appears from plaintiff's testimony that before entering the intersection he looked west on Delmar and saw automobiles approaching in the distance, he did not take the trouble to acquire any real knowledge of the position of these vehicles or the rate of speed at which they were traveling. He stated that they were "maybe a half block away," and said that he thought he had a chance to go through. He then moved forward into the intersection and traveled practically the full width of this sixty foot street without even a glance to his right, although he was aware of the approach of these cars. He also knew that Delmar Boulevard was a much traveled thoroughfare and, even if he did not know of the presence of defendants' truck, he should have realized that he was likely to encounter eastbound traffic at that time of the day. A mere glance would have revealed the presence of defendants' truck, and with that knowledge plaintiff could have averted the collisionby turning into the eastbound traffic lane, by stopping his car, or by slackening the speed of his car, to permit defendants' truck to pass in front of him.
Our general knowledge of motor vehicles tells us that any one of the above alternatives could have been employed, considering the distance traversed by plaintiff through the intersection and the speed at which he was going. It seems to us that plaintiff's conduct at the time amounted to a complete indifference to danger and constituted contributory negligence as a matter of law. The court therefore erred in giving and reading to the jury plaintiff's Instructions Nos. 1 and 2. Burton v. Moulder, Mo.Sup., 245 S.W.2d 844; Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626; Yeaman v. Storms, 358 Mo. 774, 217 S.W. 2d 495.
In view of the fact that the judgment must be reversed and the cause remanded *277 because the court erred in giving Instructions Nos. 1 and 2, there is no necessity of considering other assignments of error, inasmuch as the alleged errors complained of are not likely to recur at another trial.
The judgment is reversed and the cause remanded.
BENNICK, P. J., and IVAN LEE HOLT, Jr., J., concur.