**Nora B. JAMES, Plaintiff-Appellant,**

**v.**

**James Logan BERRY, Defendant-Respondent.**

No. 7566.

Springfield Court of Appeals.

Missouri.

May 2, 1957.

Motion for Rehearing Overruled May 8, 1957.

J. W. Grossenheider, Lebanon, for plaintiff-appellant.

Donnelly & Donnelly, Lebanon, for defendant-respondent.

STONE, Judge.

In this jury-tried action for damages resulting from an intersectional vehicular collision in Lebanon, Missouri, on June 23, 1955, plaintiff, Nora B. James, who had judgment for $1,000, appeals from the order sustaining defendant's motion for new trial on the ground (with another) that plaintiff failed to make a submissible case. The cause was submitted on defendant's alleged *primary* negligence in failing to yield the right of way to plaintiff's automobile.

At the time of accident, plaintiff and her brother, Noah Clemmons, then 71 years of age and a resident of California, were returning to plaintiff's home in Lebanon after a sight-seeing and fishing trip to the Lake of the Ozarks. They were riding in a 1955 Oldsmobile "88" owned by plaintiff, which she personally had driven to the lake that morning and on a part of the return trip the same afternoon. Although her brother was driving when the collision occurred, plaintiff readily agreed that she had the right of control over her automobile. As the record clearly establishes (and as plaintiff does not seriously dispute), plaintiff and her brother were engaged in a joint enterprise and his negligence (if any) in the operation of her automobile was imputable to her. Hill **v.** St. Louis Public Service Co., Mo., 64 S. W.2d 633, 635; Smith v. Wells, 326 Mo. 525, 547, 31 S.W.2d 1014, 1024–1025; Tannehill v. Kansas City, C. & S. Ry. Co., 279 Mo. 158, 170–171, 213 S.W. 818, 821–822(3). See also Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10, 15–16(8); Haynie v. Jones, 233 Mo.App. 948, 954, 127 S.W.2d 105, 107(4); Roland v. Anderson, Mo.App., 282 S.W. 752, 754(5).

The collision occurred at the intersection of Washington and Commercial Streets, between plaintiff's Oldsmobile south-bound on Washington and defendant's GMC pick-up east-bound on Commercial. There was a stationary "stop" sign on the northwest corner of the intersection for south-bound vehicles on Washington, but no form of traffic control for east-bound vehicles on Commercial. Commercial was fifty-five feet wide west of its intersection with Washington and forty-seven feet wide east

of that intersection. Washington was thirty-four feet wide north of the same intersection but only twenty-eight feet six inches wide south thereof.

Plaintiff insisted that her brother came to "a complete stop" at the stop sign on the northwest corner of the intersection. From that point, defendant's east-bound pickup on Commercial would have been visible—"I (plaintiff) would think so, yes, sir." Plaintiff could not remember whether she had looked in either direction. In any event, she admitted that she had not observed defendant's pickup prior to the impact. When asked whether she had seen her·brother look to his right or toward the east, plaintiff replied, "I can't say that I did; I can't remember that"; and, when defendant's counsel followed with the suggestion that "you can't say one way or the other about it," plaintiff quickly agreed, "no, I can't say." Without objection, her own counsel elicited from plaintiff the statement that, when her brother started forward from the "stop" sign, "he had to go in gear * * * and he said when he saw Mr. Berry (defendant) that he speeded up a little bit to try to avoid the accident"; and, the investigating policeman, a witness for plaintiff, said that plaintiff's brother had told him, "I stopped at the stop sign and then started across—I saw this pickup coming and saw that it was going to hit me." Thus, plaintiff's evidence indicates that her brother likewise did *not* see defendant's approaching pickup while plaintiff's automobile was standing at the "stop" sign. Certainly, the transcript before us would neither justify nor permit a contrary inference. Plaintiff's brother did not testify.

In the language of her counsel, to which plaintiff gave ready affirmation, the impact occurred "in the southwest corner of the intersection" after "the front of your (plaintiff's) car had already gone out of the intersection." The only definite statement as to the specific location of the point of impact with reference to the east and west lines of Washington was by defendant, *called as a witness by plaintiff,* who said that "we were just about as near in the center there as you could be, that is, as far as Washington is concerned," when the front end of defendant's east-bound pickup struck the right side of plaintiff's south-bound automobile. Plaintiff thought that, at the time of collision, her automobile "couldn't have been going over 15 or 20 miles" per hour. Defendant's estimate of his speed, on which plaintiff relies, was that he (defendant) "wasn't going over 20 mile an hour" as he approached and entered the intersection. He frankly admitted that he "didn't see (plaintiff's) car until I was right against it"—"it was right up on me." *Defendant's* theory of the case, supported by two by-stander witnesses, was that plaintiff's automobile, traveling at "40 or 50 mile an hour," came into the intersection without stopping or even diminishing speed.

■■ Granting to plaintiff, as we should and do, the benefit of the evidence most favorable to her and all inferences reasonably deducible therefrom [see cases collected in West's Missouri Digest, Appeal and Error, ■■■ the triers of the facts reasonably might have inferred and found, as plaintiff's counsel here emphasizes, that plaintiff's automobile entered the intersection first. And, although Section 304.021(1), 16 V.A.M.S. [Laws of 1953, loc. cit. 592(16)], on which plaintiff leans heavily, is inapplicable in the instant case because of the "stop" sign which is a "form of traffic control" [Creech v. Blackwell, Mo., 298 S.W.2d 394, 399(3)], we recognize that, absent any applicable statute or ordinance, the vehicle first reaching and entering an intersection *ordinarily* has the right of way over a vehicle subsequently entering the same intersection. Wilson v. Toliver, Mo., 285 S.W.2d 575, 580(5), and authorities there cited. But, mere split-second priority in entering an intersection first, either by "nosing" across the projected curbline of the intersecting highway after a complete stop [e.g., Branscum v. Glaser, Mo., 234 S.W.2d 626; Folluo v. Gray, Mo.App., 256 S.W.2d 273] or by racing into the intersection at undiminished speed [e.g., Douglas v. Whitledge, Mo.App.,

302 S.W.2d 294; see also Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 500], does not give an absolute and unqualified right to proceed regardless of then existing circumstances and conditions, although many motorists apparently entertain that mistaken notion. Wilson v. Toliver, supra, 285 S.W.2d loc. cit. 582(10).

■ Thus, a motorist who desires to enter an intersection on a through highway is required to "yield the right of way to other vehicles which have entered the intersection on the through highway *or which are approaching so closely on the through highway as to constitute an immediate hazard.*" (All emphasis herein is ours.) Section 304.-021(4), 16 V.A.M.S.; Laws of 1953, loc. cit. 593(19). The same limitation finds even more forceful expression in Ordinance No. 1164 of the City of Lebanon, Missouri (received in evidence pursuant to stipulation of the parties), which provides that "the driver of a vehicle shall likewise stop in obedience to a stop sign * * * at an intersection where stop signs are erected at one or more entrances thereto, although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection *or approaching so closely as to constitute an immediate hazard,* and may then proceed." And, in the absence of an applicable statute or ordinance, the driver first entering an intersection "would be contributorily negligent if he entered when it appeared or should have appeared to him as a reasonably prudent person that to enter would probably result in a collision." Creech v. Blackwell, supra, 298 S.W.2d loc. cit. 400. To the same effect, see Wilson v. Toliver, supra, 285 S.W.2d loc. cit. 580.

■ In the case at bar, the driver of plaintiff's south-bound automobile had an obligation, imposed by the quoted ordinance, to stop in obedience to the sign on the northwest corner of the intersection, and plaintiff's theory of the case was and is that her brother recognized that obligation and stopped. Before moving from such position of safety at the "stop" sign and attempting to proceed through the intersection, plaintiff's brother had a duty to look for traffic approaching from his right or from the west, as was defendant's pickup. Weis v. Melvin, Mo., 219 S.W.2d 310, 311(3); Burke v. Renick, Mo.App., 249 S.W.2d 513, 516. This was a duty not to be discharged by a fleeting, hurried, perfunctory, mechanical and indifferent glance, but rather was a duty requiring plaintiff's brother not only to look in such observant manner as to see that which a person in the exercise of the highest degree of care then could and should have seen but also to exercise due diligence in estimating the speed of approaching vehicles and the intervening distance between such vehicles and plaintiff's automobile. Kaley v. Huntley, 333 Mo. 771, 777, 63 S.W.2d 21, 23(2); Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378, 383(4). See also Burton v. Moulder, Mo., 245 S.W.2d 844, 846(6, 7).

■ Obviously, defendant's east-bound pickup must have been within the quick, ready and easy range of vision of plaintiff and her brother when they stopped (as plaintiff insisted) before entering the intersection. Branscum v. Glaser, supra, 234 S.W.2d loc. cit. 627; Weis v. Melvin, supra, 219 S.W.2d loc. cit. 311; Roux v. Pettus, Mo.App., 293 S.W.2d 144, 146. Whether plaintiff's brother actually saw defendant's pickup before proceeding into the intersection is not material to proper determination of this appeal. For, where there is a duty to look, the driver of a motor vehicle is as negligent in failing to see that which could have been seen in the exercise of due care as in failing to look at all [Kaley v. Huntley, supra, 63 S.W.2d loc. cit. 23–24; Rohmann v. City of Richmond Heights, supra, 135 S.W.2d loc. cit. 383(5)], and the failure to see what is plainly visible constitutes negligence as a matter of law. Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 546(5, 6); Branscum v. Glaser, supra, 234 S.W.2d loc. cit. 627(2). See also Wilkins v. Stuecken, 359 Mo. 1047,

225 S.W.2d 131, 134(4); Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 625–626(12).

■ Of course, the location and speed of a vehicle on an intersecting street or highway, even though approaching from the right, in many instances is such that a motorist, although having stopped before entering the intersection, nevertheless may be justified in attempting to cross in front of such approaching vehicle. E. g., Cooksey v. Ace Cab Co., Mo., 289 S.W.2d 40. However, insofar as *primary* negligence is concerned, the obligation to exercise due care remains mutual and reciprocal, and one may not disregard the laws of prudence and exact of others a primary obligation to protect him against his own lack of caution. Wilson v. Toliver, supra, 285 S.W.2d loc. cit. 582; Danzo v. Humfeld, Mo., 180 S.W. 2d 722, 726. Having in mind the duty of plaintiff's brother to yield to vehicles "approaching so closely as to constitute an immediate hazard," we are convinced that, on the record here presented, reasonable minds would agree that his conduct fell below the standard to which he should have conformed to protect plaintiff and himself from injury [Burton v. Moulder, supra, 245 S.W.2d loc. cit. 847(8); Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228, 236(16)] and that plaintiff's own evidence established the contributory negligence of her brother (and thus of herself) as a matter of law. See particularly Folluo v. Gray, supra, 256 S.W.2d 273. Consult also Yeaman v. Storms, supra, 217 S.W.2d loc. cit. 499–500 (6); Branscum v. Glaser, supra, 234 S.W. 2d loc. cit. 627(3); Wilson v. Toliver, supra, 285 S.W.2d loc. cit. 582–583; Roux v. Pettus, supra, 293 S.W.2d 144; Douglas v. Whitledge, supra.

Since plaintiff did not make a submissible case on her theory of primary negligence, the order granting a new trial to defendant was proper and should be affirmed, and the cause should be remanded for further proceedings not inconsistent herewith. It is so ordered.

McDOWELL, P. J., and RUARK, J., concur.

On Motion for Rehearing

STONE, Judge.

In his motion for rehearing, plaintiff recognizes that "there is no testimony from any witness as to any definite speed of the defendant's vehicle except that given by the defendant himself who admittedly was called as plaintiff's witness"; but, *for the first time,* plaintiff's counsel now suggests that the jury reasonably might have inferred from some of "the physical facts" that defendant's pickup was traveling faster than twenty miles per hour. In our opinion, we simply followed and adopted the theory of plaintiff's counsel who, in outlining on page 9 of his brief, the testimony *"most favorable to plaintiff"* which, "if accepted by the jury as shown by their verdict, made a submissible case," included the unambiguous, unequivocal and unqualified factual statement that *"the defendant proceeded into this intersection at a speed of 20 m. p. h."*

■ As we read the record, it would not have permitted the *inference* for which plaintiff's counsel *now* contends; but, *if* defendant's pickup had been approaching the intersection at a faster rate of speed, that would have afforded no legal justification or excuse for the failure of plaintiff's brother to exercise the care required of him. See Branscum v. Glaser, Mo., 234 S.W.2d 626, 627, where the court commented that apparently plaintiff's husband had not seen defendant's approaching truck "or he would not have gone on to the highway in front of it, traveling as plaintiff alleged it was, *at excessive and dangerous speed."* (Emphasis ours.)

Plaintiff's motion for rehearing is overruled.

McDOWELL, P. J., and RUARK, J., concur.