**Sharon L. O'DONNELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 77–367C(A).**

United States District Court, E. D. Missouri, E. D.

April 12, 1979.

**12**

Hullverson, Hullverson & Frank, Inc., John J. Frank, St. Louis, Mo., for plaintiff.

Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, District Judge.

Sharon L. O'Donnell brought this action against the United States of America for damages which she has sustained as a result of the death of her husband, Patrick Michael O'Donnell. The plaintiff's first amended complaint alleges that Sharon L. O'Donnell is a citizen of the State of Missouri and that she was the wife of Patrick Michael O'Donnell, deceased; that on or about August 30, 1976, one Leslie Theresa DeSherlia was an employee of the United States Post Office, an agency of the United States Government, and at all times hereinafter was acting in the course and scope of her employment as an agent of the United States; and that on the 30th day of August, 1976, the deceased, Patrick Michael O'Donnell, was operating his motorcycle northbound on Lilac Road, at or near the intersection with Dunn Road, when it came into a collision with a United States Postal Service Van being operated by defendant's agent, Leslie Theresa DeSherlia. Plaintiff further alleges that the collision was caused by the failure of defendant's agent to keep a careful lookout, failure to yield the right of way, and failure to observe a stop sign, and that as a direct result of such negligence of defendant's agent, Patrick Michael O'Donnell was killed.

Jurisdiction of this Court over this cause of action exists pursuant to 28 U.S.C. § 1346(b).

This case was tried before the Court. The testimony discloses that on August 30, 1976, at approximately 10:00 a. m., the decedent, Patrick Michael O'Donnell, was operating his 1972 Honda CB 350 Motorcycle northbound on Lilac Road, proceeding to his place of employment, the S & R Auto Parts Store. Lilac Road is a public through street, running in a generally north and south direction at the intersection with Dunn Road, which runs in an east and westerly direction at that point. Approximately 340 feet south of the Dunn Road intersection there is a bridge on Lilac Road spanning approximately 208 feet, which runs over Interstate 270. Lilac Road has two-way traffic and is four lanes wide with two in each direction south of the intersection with Dunn Road. However, immediately north of the intersection Lilac Road narrows to two lanes. Dunn Road has two-way traffic and is two lanes wide at the intersection with Lilac Road. Lilac Road

has no traffic control device at the intersection with Dunn Road, while Dunn Road traffic is controlled by stop signs. Pursuant to Ordinance 3612, Bill No. 141, the speed limit on Lilac Road from Interstate 270 to the south is 40 miles per hour. From Interstate 270 to the north on Lilac Road, which includes the Dunn Road intersection, the speed limit is 30 miles per hour. While the speed limit changes immediately north of Interstate 270, the change in the speed limit from 40 to 30 is not posted on Lilac Road until a point which is north of the Dunn Road intersection.

On August 30, 1976, the weather was clear and sunny and the road was dry. Just after the decedent entered the Dunn Road intersection, traveling northbound on Lilac Road, he collided with a one-ton United States Postal truck traveling west on Dunn Road and being driven by Leslie Theresa DeSherlia. The front of the motorcycle collided with the left front quarter panel of the postal truck from a point starting at the front left corner of the truck and proceeding back to a point approximately in the middle of the front left wheel. There were no eyewitnesses to the collision. Patrick Michael O'Donnell made no statement at the scene of the accident and was pronounced dead upon arrival at St. Louis County Hospital at 11:55 a. m. on August 30, 1976.

The driver of the postal truck testified that she as proceeding west on Dunn Road, and that she came up to the stop sign at Lilac Road and stopped at a point even with the sign. The postal driver stated that she remained stopped at the sign for a period of a few minutes while she looked through some mail which was located to the left of the driver's seat. She then surveyed the area around the intersection in an effort to familiarize herself with the surroundings as she had not been on this particular route before. She noticed no other traffic at or near the intersection so she proceeded from the stop sign, checking to her left and right as she entered the intersection. Approximately two to three seconds after leaving the stop sign the driver of the postal truck heard a loud noise. Whereupon, she looked to her left, at which time the motorcycle driven by decedent collided with the front left quarter panel of the truck. The driver of the postal truck did not see the decedent's motorcycle at all prior to impact. The driver stated that she did not stop, slow, sound her horn, or swerve prior to impact, and that the speed of her vehicle at the time of impact was between 10 and 20 miles per hour.

While there were no eyewitnesses to the collision, the decedent's motorcycle was observed just prior to the collision by two Missouri State Highway Department maintenance employees, Frank Walton and Harlan Plunk. The two men were standing on the grass (shown by a red X on Exhibit 20), just east of Lilac Road and just south of the eastbound entrance ramp of interstate 270, a distance of approximately 700 feet south of the Dunn Road intersection. Each testified that they observed the decedent traveling north on Lilac Road and as he came around a curve, immediately south of Pershall Road, the motorcycle left the roadway and traveled onto the gravel shoulder on the east side of Lilac Road. Each testified that the decedent went onto the shoulder a distance of about 10 feet, and then returned to the roadway. However, after returning to the roadway the decedent's motorcycle proceeded across the center line of Lilac Road as he crossed through the Pershall Road intersection, which is located about 950 feet south of the Dunn Road intersection. After passing through the Pershall Road intersection, the decedent returned the motorcycle to the left-hand northbound lane of Lilac Road, this taking place prior to the motorcycle reaching the point where the two men were standing. Each man testified that the decedent's motorcycle was traveling about 50 miles per hour as it proceeded past the point where they were standing. The men continued to observe the decedent's motorcycle until it reached a point on Lilac Road about the middle of the Interstate 270 overpass. Thus, neither man observed the decedent's motorcycle traveling northbound beyond a point approximately 450 feet south of the Dunn Road intersection.

**14**

It is well settled that before moving from the stop sign and attempting to cross through the intersection, the driver of the postal truck, in the exercise of the highest degree of care, was required to look for traffic approaching from either direction on Lilac Road. *James v. Berry*, 301 S.W.2d 530, 533 (Mo.App.1957). Furthermore, the postal driver was obligated to look in such an observant manner so as to see that which a person in the exercise of the highest degree of care then could and should have seen. *James v. Berry*, supra.

The postal driver testified that she was proceeding west on Dunn Road, that she came to the stop sign located on the northeast corner of the Lilac Road intersection, and that she stopped at a point even with the sign. From that point the evidence indicates there is an unobstructed view to the south on Lilac Road for a distance of approximately 550 feet. The postal driver testified that after leaving the stop sign a period of about two to three seconds elapsed before the collision. Taking the greater of the two, three seconds, and the testimony of the maintenance men estimating the speed of decedent's motorcycle as 50 miles per hour (or 73.33 feet per second), then in the three seconds which elapsed between the time the postal truck left the stop sign and the collision itself, the decedent would have traveled about 220 feet. Thus, at the time that the postal truck pulled from the stop sign, the decedent's motorcycle would have been approximately 220 feet south of the intersection, or clearly within the postal driver's range of vision. Nevertheless, the postal driver testified that she did not see decedent's motorcycle approach the intersection. In *James v. Berry*, supra, the Court stated at page 583:

"* * * where there is a duty to look the driver of a motor vehicle is as negligent in failing to see that which could have been seen in the exercise of due care as in failing to look at all (citations omitted), and the failure to see what is plainly visible constitutes negligence as a matter of law." (Citations omitted.)

With an obligation to look for approaching traffic on Lilac Road before entering the intersection, the driver of the postal truck failed to see decedent's motorcycle approaching, which was plainly visible. Such conduct constitutes negligence as a matter of law.

VAMS Section 304.351(4)(1)(a) defines the obligations of the postal driver as she proceeded from the stop sign into the Lilac Road intersection, which states in part:

"Except when directed to proceed by a police officer or traffic control-signal, every driver of a vehicle approaching a stop intersection, indicated by a stop sign, shall stop * * *. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on the highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection."

The credible evidence puts the decedent's motorcycle within 220 feet of the intersection and well within the postal driver's range of vision when the postal truck pulled away from the Dunn Road stop sign. As she was stopped at the stop sign and preparing to enter the intersection, in the exercise of the highest degree of care and maintaining a careful lookout, the postal driver should have seen decedent's motorcycle approaching. After seeing decedent's motorcycle, and exercising due diligence in estimating the rate of its approach, it reasonably should have appeared to the postal driver that the approach of decedent's motorcycle created an immediate hazard of a possible collision. In the absence of legal justification or excuse, the postal driver's failure to yield the right of way in direct contravention of 304.351(4)(1)(a) constitutes negligence per se. See *Bowman v. Ryan*, 343 S.W.2d 613, 622 (Mo.App.1961).

Turning to the question of causation, the proper test of failure to keep a careful lookout as a proximate cause is whether in the exercise of the highest degree of care the driver of the postal truck

could have seen the decedent's motorcycle in time to have taken effective precautionary action in avoidance. *Marshall v. Bobbitt*, 482 S.W.2d 439 (Mo.1972). The credible evidence shows that in the exercise of the highest degree of care and maintaining a careful lookout, the driver of the postal truck should have seen decedent's motorcycle approaching as she prepared to pull from the stop sign. Had the postal driver maintained a careful lookout and seen decedent's motorcycle approaching, the postal driver could have refrained from entering the intersection until the decedent's motorcycle cleared it. Under the test set forth in *Marshall v. Bobbitt*, supra, the postal driver's failure to keep a careful lookout was definitely a proximate cause of the collision in which Patrick Michael O'Donnell was killed.

As for the postal driver's failure to yield the right-of-way, in violation of 304.-351(4)(1)(a), the Court finds a direct causal connection between the postal driver's failure to yield the right-of-way and the resulting collision involving the decedent. Had the postal driver yielded the right-of-way in accordance with 304.351(4)(1)(a), the collision with decedent's motorcycle would not have occurred.

■ The Court now turns to consider the defendant's allegations of contributory negligence on the part of the decedent. Under Missouri law it is well settled that the fact of excessive speed need not be shown by direct testimony, but that it may be proved by circumstances. *Russell v. Kotsch*, 336 S.W.2d 405, 409 (Mo.1960). In the case of *Powell v. Watson*, 526 S.W.2d 318, 327 (Mo. App.1975), the Court stated:

"We have already echoed that excessive speed may be proved by circumstantial evidence; we add recognition that while neither skidding nor the heavy destructive effect of an impact is in itself proof of negligently high speed, either, when taken together with all other circumstance, may indicate excessive speed."

■ The speed limit by ordinance on Lilac Road at the scene of the accident was 30

miles per hour. However, there were only two postings of the speed limit in the general area on Lilac Road, a 40 miles per hour speed limit sign posted south of Pershall Road, and a 30 miles per hour speed limit sign posted north of Dunn Road. While there is no direct evidence as to the speed of decedent's motorcycle at the time of entering the intersection, the decedent's motorcycle was seen traveling at a speed of "about 50 miles per hour" some 700 feet south of the Dunn Road intersection, at which time it was making a loud noise, and after it passed such point the noise increased in intensity. Further, there were no skid marks at the scene of the accident, or any other evidence which would indicate that the decedent reduced the speed of his motorcycle between the time it was last seen traveling 50 miles per hour and the time of the collision. Lilac Road from the Interstate 270 overpass to the Dunn Road intersection is virtually level, and if anything there is a slight downgrade from south to north. Consequently, there would have been no reduction in the speed of decedent's motorcycle attributable to the grade of the road. The excessive speed at which the decedent was traveling at the time of the collision is further evidenced by the numerous injuries which were sustained by the decedent, who was wearing a helmet at the time of the collision. The decedent suffered severe head injuries (which were the cause of death), a fractured jaw, a fractured clavicle, multiple fractures of both legs, and severe lacerations of the left arm and right hand as a result of the collision. Based upon all the evidence it is reasonable to conclude that the decedent was negligently traveling at an excessive speed at the time of the collision.

In the case of *Miller v. Fink*, 387 S.W.2d 173, 176–177 (Mo.App.1965), the Court discussed "excessive speed" and the issue of proximate cause, stating:

"* * * it should be noted that the courts of this state have held that excessive speed is not the proximate cause unless it prevents the operator of the vehicle traveling at the excessive speed

from avoiding the accident. It must be shown therefore that the collision and resulting injuries would not have occurred except for the excessive speed shown by the evidence." (Citation omitted.)

The Court in *Miller v. Fink*, supra, continued by quoting the following language from *Watt v. St. Louis Public Service Co.*, 354 S.W.2d 889, 891 (Mo.1962):

"Causal connection, it is true, must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture. The rule, however, does not require that there must be direct proof of the fact itself. This would often be impossible. It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred."

Using the above test, we turn to consider the evidence in the present case. First of all, the evidence showed that the decedent was familiar with Lilac Road and the Dunn Road intersection. Further, the evidence established that from a point in the center of the left-hand northbound lane of Lilac Road, approximately 646 feet south of the Dunn Road intersection, looking north, there is a clear, unobstructed view of the Dunn Road intersection. The evidence further showed that the postal truck was stopped at the Dunn Road intersection for a period of a few minutes prior to entering the intersection. Based upon the above evidence, it is reasonable to conclude that from the time that the decedent was approximately 646 feet from the Dunn Road intersection until the time of the collision, the postal truck was within the decedent's clear range of vision.

The evidence further showed that Lilac Road was approximately 48 feet in width at the intersection, with the width tapering down to approximately 24 feet immediately north of the Dunn Road intersection. The evidence also disclosed that the postal truck was approximately 16½ feet in length. The two previous items of evidence, when coupled with the credible evidence establishing the point of impact occurring across the center line of Lilac Road in the northwest quadrant of the intersection, indicates that there was substantial clearance in the northbound lanes of Lilac Road at the time of the collision. Furthermore, the fact that the point of impact occurred west of the center line of Lilac Road establishes that the front of the postal truck traveled a distance in excess of 40 feet after coming to a stop at the stop sign before the impact. The more credible evidence would indicate that approximately three seconds elapsed between the time that the postal truck pulled from the intersection until the time of the collision. While the speed limit at the point of impact was 30 miles per hour for this three-second period, from the standpoint of the decedent, the difference in terms of distance between traveling at 40 miles per hour (the last posted speed limit south of the point of impact) and 50 miles per hour (the speed of decedent's motorcycle), is that a vehicle travels about 45 feet less at 40 miles per hour than at 50 miles per hour. In terms of the time of impact, the difference of 45 feet at 40 miles per hour translates into an additional seventy-seven hundredths of a second elapsing before the collision could possibly occur. From the standpoint of the postal truck, an additional seventy-seven hundredths of a second would allow the postal truck, traveling a speed of 15 miles per hour (or 22 feet per second), to proceed an additional 17 feet through the intersection, and thus be entirely on the west side of Lilac Avenue and thus out of the path of decedent's motorcycle. Finally, the evidence showed no trace of skid marks from the decedent's motorcycle, and thus there was no evidence that the decedent slowed his motorcycle prior to impact.

Based upon all the aforementioned evidence, this Court finds that an alert decedent would have avoided the collision if he had not been traveling at an excessive speed. For this reason the Court finds that the decedent's excessive speed was a proximate cause of the collision with defendant's postal truck.

Accordingly, the Court finds in favor of the defendant and against the plaintiff.

This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk of the Court is directed to prepare and enter the proper judgment as set out above.