234 S.W.2d 626 (1950)
BRANSCUM
v.
GLASER.
No. 41588.
Supreme Court of Missouri, Division No. 1.
December 11, 1950.
B. J. Creech, Troy, George F. Heege, Clayton, Williams & Huston, Troy, (Wm. Hungate, Troy, of counsel), for appellant.
Byron G. Carpenter, Julian C. Jaeckel and Moser, Marsalek, Carpenter, Cleary & Carter, all of St. Louis, for respondent.
HYDE, Judge.
Action for $15,000.00 damages for wrongful death of plaintiff's husband, killed in a collision between his car and defendant's gasoline tank truck. Verdict and judgment for defendant, from which plaintiff appeals.
The case was submitted solely upon humanitarian negligence. Plaintiff alleges error in giving and refusing instructions and improper cross-examination and oral argument. However, we have concluded that these matters are immaterial because plaintiff failed to make a case for the jury and defendant's motion for a directed verdict should have been sustained. Bello v. Stuever, Mo.Sup., 44 S.W.2d 619, and cases cited. We will, therefore, state the facts shown by the evidence most favorable to plaintiff.
On April 14, 1948, plaintiff's husband Cagle Branscum, accompanied by his son Troy Branscum, was driving his automobile (an Oldsmobile) south on Highway C (a north and south highway of St. Louis County) approaching its intersection with U. S. Highway 50, on which defendant's truck was being driven west by his employee Thomas Eatherton. The pavement *627 was wet from intermittent rains. The Branscums were going to Eureka, which required them to cross Highway 50 and continue on Highway B which was an extension of Highway C south of the intersection. There was an "S curve" on Highway 50 east of the intersection but it was possible to see from 1000 to 1200 feet east from the intersection. On Highway C also, the approach from the north was on a curve. However, on both highways, there was a four lane straight strip about 40 feet wide and 150 feet long on each side of the intersection. There were hills on each side of the intersection, on all four approaches to the intersection, so that the approach was down grade from every direction, although it was level on the four lane strips except on the one to the south. The view north on Highway C, of one approaching from the east, was obstructed by trees and shrubbery and there was also a house at the northeast corner of the intersection. The testimony was that it was possible to see north on Highway C from 75 to 100 feet (one witness said 150 feet) when 400 feet east of the intersection on Highway 50. There was a stop sign on both the north and south sides of Highway 50 facing traffic coming on to Highway 50, but none for traffic on Highway 50, which, therefore, had the right of way.
A Highway Patrolman (witness for plaintiff) who came to the scene soon after the collision between defendant's truck and Branscum's car, fixed the point of collision from debris and marks on the highway as about two feet north of the center line of Highway 50 and about two feet west of the center line of Highway C. The collision marks on the Branscum car extended back from the windshield, showing that the front of the Branscum car was two or three feet over the center line of Highway 50 at the time of the collision. There were no skid marks east of the point of collision on Highway 50 and none north of that point on Highway C. There were marks from that point southwest across Highway 50 to the place where both vehicles were found south of that highway after the collision.
The only account of what occurred was given by Troy Branscum. He said his father stopped at the stop sign on the north side of Highway 50; that "he changed gears and started across the highway" and was going "approximately 12 to 15 miles per hour"; and that "the truck hit us instantly and that is all that I remember." He said he first saw the truck "just as it hit us." He did not say that his father looked east before proceeding into the intersection. He said he had never been over the intersection before but that his father had. Defendant had evidence that no stop was made by the Branscum car.
Plaintiff made several allegations of primary negligence. However, plaintiff was not entitled to submit any of these charges of negligence to the jury (and the trial court did not submit them) because Mr. Branscum was clearly guilty of contributory negligence as a matter of law. When he stopped his car at the stop sign, he could have seen east from there at least 1000 feet on Highway 50. Defendant's truck must have been much closer than that and in plain view. Apparently he did not see it or he would not have gone on to the highway in front of it, traveling as plaintiff alleged it was, at excessive and dangerous speed. The only reasonable conclusion is that he either did not look east or looked so negligently that he did not see the truck which was there in plain view. "Where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed." Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S.W.2d 548, 553; Weis v. Melvin, Mo.Sup., 219 S.W. 2d 310, 311. "The law is further well settled that `a failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law.'" State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915, 918; Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621, 625, 626. Branscum either did not look, or having looked, failed to see what was plainly visible to him. Under these circumstances *628 we hold him guilty of contributory negligence as a matter of law.
We must also hold that plaintiff failed to make a humanitarian negligence case. In the first place, there was no evidence as to the speed of defendant's truck at or immediately prior to the collision. One of defendant's witnesses, who stopped at his store about 1200 feet east of the intersection, said that the truck had been following him closely for some distance while he was going about 35 miles per hour. However, there is nothing to show whether the truck continued at the same speed after this witness turned off the highway and its speed could well have been increased going down the hill, or to make the hill west of the intersection. Plaintiff had an expert witness who testified the truck, loaded as it was (730 gallons of gasoline and 105 gallons of kerosene), could have been stopped, at a speed of 40 miles per hour, in 150 to 200 feet after the application of the brakes. However, there is not only no evidence as to the speed of the truck but none whatever as to where it was when the Branscum car started from its stop to go into the intersection. As was said in Miller v. Wilson, Mo.App., 288 S.W. 997, loc. cit. 999: "When, as is the case here, the record is utterly devoid of evidence as to defendant's speed, the distance within which he could have stopped his automobile, or the relative positions of the two machines at the moment when defendant could first be charged with actual or constructive notice of plaintiff's perilous position and of the danger of a collision, no case is made for the application of the humanitarian rule." One of the essential elements of the humanitarian rule is that "defendant after receiving such notice (of a person's position of imminent peril) had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others". Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484. There is a total failure of proof herein as to this element. Of course, Branscum was not in peril at all while his car was stopped at the stop sign and defendant's driver was under no humanitarian duty to take any action until he started his car toward the highway. (It was not even shown how far the stop sign was from the place of collision. Since there was no evidence as to where the truck was at the time the car was started, or how fast the truck was then going, there was no basis for a finding of this essential element of plaintiff's case.
The judgment is affirmed.
All concur.