**Maybelle WATKINS, Respondent,**

v.

**Catherine WEST, Executrix of the Estate of William E. West, Deceased, Appellant.**

No. 22453.

Kansas City Court of Appeals. Missouri.

Jan. 7, 1957.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Kansas City, for appellant.

Thomas A. Moran, Leonard Swade, David Waldman, Kansas City, for respondent.

SPERRY, Commissioner.

Mrs. Watkins, plaintiff herein, sued Mr. West for damages resulting from personal injuries alleged to have been received when an automobile driven by plaintiff collided with Mr. West's automobile at the intersection of 51st Street and Wornall Road, in Kansas City, Missouri. Mr. West died and the cause was revived in the name of Mrs. West, his executrix. From a verdict and judgment for plaintiff, in the amount of $5,200, defendant has appealed.

The accident occurred on September 5, 1952, during daytime, in clear weather. Plaintiff's evidence is to the effect that she was proceeding south on Wornall at a speed of 30 miles per hour; that she first saw defendant's car when she was about 80 feet north of the intersection; that defendant's car did not stop, from the time she saw it, although it appeared to be slowing for a stop, but that it accelerated speed and proceeded on towards the east, across the intersection; that when she was about 50 feet away she realized defendant's car was not going to stop; that she braked her car, thereby reducing its speed; that the left front of her automobile struck the left rear of defendant's vehicle; that plaintiff's speed, at the instant of impact, was less than 5 miles per. hour; that defendant's speed was from 10 to 15 miles per hour; that, upon impact, plaintiff's car was dragged to the east, so that, afterward, it was facing southeast; that defendant's car, after the collision, proceeded northeasterly, across the curbing, and struck a tree.

The evidence was that there is a stop sign on 51st Street, some 10 or 12 feet west of the curbline of Wornall but that, from that point, a car driver cannot see cars approaching the intersection from the north because of a high stone wall, surmounted by vegetation, which forms the

**570**

south and east boundry of the property at that corner; that plaintiff could not see a car on 51st Street until it practically reached the curbline, and that defendant could not have seen plaintiff's car much before reaching that point.

Mr. West, in his deposition, stated that he stopped at the sign but, being unable to see along Wornall to the north, he proceeded slowly to the curbline; that he stopped at the curbline, and looked north; that he saw no cars within 125 to 150 feet; that he looked to the south and saw no traffic for a distance of several hundred feet, in that direction, and proceeded into the intersection; that Mr. Moore, his passenger, first saw plaintiff's car approaching and called it to his attention; that he, Mr. West, then looked and saw it, from 75 to 100 feet away; that he heard tires screeching; that his car was travelling at a speed of 12 or 15 miles per hour when the collision occurred; that he was accelerating speed at that time.

Mr. West's testimony was generally corroborated by that of Mr. Moore, who was a passenger in the West automobile. He estimated plaintiff's speed at from 35 to 50 miles per hour when he first saw her car, some 100 feet away. He stated that, when the West car was stopped at the curbline at Wornall, he could see north to a distance of 125 to 150 feet, but that he saw no car coming from that direction.

Plaintiff submitted only the issue of defendant's failure to keep a lookout. Defendant contends that no submissible case was made on that issue.

 The evidence most favorable to plaintiff indicates, and from it the jury could have found, that plaintiff was travelling 30 miles per hour (thereafter slowing to less than 5 miles) and defendant was travelling 15 miles per hour when defendant entered the intersection; that defendant travelled 45 to 50 feet after entering the intersection, while plaintiff travelled from 80 to 100 feet, before the collision

occurred; that defendant could have seen plaintiff's car approaching, when it was more than 80 feet from the intersection, before defendant entered the intersection, if he had looked. It was his duty to look before entering this much travelled street. Parkville Milling Company v. Massman, Mo.App., 83 S.W.2d 128, 131; Branscum v. Glaser, Mo., 234 S.W.2d 626, 627, 628. It was his duty to look and to see what was plainly visible. Failure to see what was in plain sight also constitutes negligence. Branscum v. Glaser, supra; Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, 134. If he looked, and if he saw plaintiff's car approaching at a speed of 30 miles per hour, or *faster*, it was his duty to wait and not enter the intersection until it was safe to do so. From the evidence most favorable to plaintiff the jury could have found that he entered the intersection without looking or, if he looked, that he entered it without seeing what was obvious. The court, therefore, committed no error in submitting the case on the issue of defendant's failure to keep a lookout.

Defendant next contends that the court erred in giving plaintiff's Instruction 1 because it predicates liability on Mr. West's *failure to keep a lookout*, not upon his failure *to exercise the highest degree of care to keep a lookout*.

The instruction is as follows:

"The Court instructs the jury that the defendant admits that a collision occurred between the automobile being operated by the defendant, William E. West, and the automobile being operated by the plaintiff, Maybelle Watkins, at the intersection of 51st Street and Wornall Road in Kansas City, Missouri, on September 5, 1952. The Court further instructs the jury that it was the duty of the defendant, in operating said automobile at said time and place, to exercise the highest degree of care, which is that degree of care that a careful and prudent person would use under like or similar circumstances.

"Therefore, if you find and believe from the evidence that the defendant, William E. West, at the aforesaid time and place omitted and failed to keep a proper and vigilant lookout to the north for southbound traffic on Wornall Road, including the car driven by the plaintiff, if so, and if you further find and believe that by reason thereof, if you so find, the defendant drove his automobile directly into the course of the automobile which plaintiff was operating, if you so find, the Court instructs the jury that such act or omission constituted negligence on the part of the defendant, William E. West, if you so find, and that if you further find and believe from the evidence that as a direct result of such failure and omission of the defendant, if you so find, plaintiff was injured, if you so find, then your verdict must be for plaintiff, Maybelle Watkins, and against the defendant William E. West."

 We cannot say that the instruction, when read as a whole, as it should be (Warsham v. Lewis, Mo.App., 281 S.W. 82; White v. Kansas City Public Service Company, Mo.App., 140 S.W.2d 711, 712) should be held to be prejudically erroneous under the circumstances and evidence in this case; but we cannot unqualifiedly approve it as a model. The operator of an automobile on public streets and highways is under a continuous duty to exercise the highest degree of care at all times to keep a lookout for persons thereon. Mayfield v. Kansas City Southern Railway Company, 337 Mo. 79, 85 S.W.2d 116, 123. Therefore, if defendant "omitted and failed to keep a proper and vigilant lookout," and if the jury so found, under the evidence, it would follow that he was guilty of negligence. Here, defendant claimed to have looked, vigilantly, to the north and to have not seen plaintiff's car within 150 feet of the intersection before proceeding into it. The question in dispute is whether or not he looked effectively as he said he did.

 It is urged as error that plaintiff's counsel argued that it might be inferred, from certain evidence, that defendant "ran" the stop sign. We think this contention is well made. Plaintiff stated that defendant slowed as though to stop but that he did not stop. However, defendant and his witness Moore stated that he stopped *twice*. The stonewall obstruction at the intersection would, concededly, prevent plaintiff from seeing defendant much before he reached the curbline. She did not testify, positively, that defendant failed to stop, only that he did not stop *after* she first saw him. She did not state the location of defendant's car when she first saw it, nor was there any other testimony fixing the location. The only positive evidence on the question of stopping was to the effect that defendant did stop. It was, therefore, improper for plaintiff's counsel to comment on defendant's failure to stop, or to draw an inference to that effect contrary to the only direct evidence on the point, even though such evidence came from defendant. The issue of failure to stop was pleaded but was abandoned by plaintiff's failure to prove or submit it. It not being an issue it was error to argue the issue. Casto v. Railway Express Company, Mo. App., 219 S.W.2d 276, 280–281; Chawkley v. Wabash Ry. Co., 317 Mo. 782, 297 S.W. 20, 30. All error is presumed to be prejudicial unless the contrary appears. We cannot say that this error was not prejudicial.

Error is predicated on plaintiff's argument to the jury to the effect that there was medical evidence establishing injury to her autonomic nervous system. Such injuries were not pleaded and, when counsel referred to such injuries, in his opening statement, objection thereto was sustained. Medical testimony tending to prove same was offered, but defendant's objection was sustained and such testimony as the witness had given on the point was stricken on motion. When plaintiff's counsel referred to such injuries, in his argument, defendant objected. Counsel for plaintiff stated that a certain medical witness had given testimony on the subject and the court

ruled that he had done so, and overruled objections to the argument. Obviously, both counsel and the court overlooked the fact that such testimony was received over objection and was stricken on motion made at the time. Plaintiff says that the following allegation, in the pleading: "In that plaintiff received a nervous shock, resulting in nausea," in effect pleads injury to the autonomic nervous system. There was evidence of injury to the nervous system. Plaintiff says that it is common knowledge that the autonomic nervous system is a part of the general nervous system. She cites Taber's Cyclopedic Medical Dictionary, page A-111. She contends that, therefore, no error was committed. The nature and extent of plaintiff's injuries as a subject beyond the general knowledge of courts and juries. For that reason the opinion of medical authorities is received in evidence.

■ We think it was error for plaintiff's counsel, over objection, to argue such injury. Holmes v. Terminal R. Ass'n, 363 Mo. 1178, 257 S.W.2d 922, 928–929; Reese v. Illinois Terminal R. Co., Mo., 273 S.W. 2d 217–225. We cannot say that the error was not prejudicial in view of defendant's serious contention that the verdict was excessive.

■ It is also urged that plaintiff's argument, to the effect that a verdict of $400 or $500 wouldn't even be enough to pay for the "mere trial," was error. Ordinarily, costs of litigation constitute no element of recoverable damages in a negligence action for damages for personal injuries. 25 C.J.S., Damages, § 50, pp. 532–533. Plaintiff contends that her argument, in this respect, was provoked by defendant's argument to the effect that, if there was liability plaintiff, nevertheless, had not suffered damages for her injuries in excess of from $400 to $500. The latter argument was a legitimate one for defendant to propound and does not authorize an improper argument in answer thereto.

Defendant urges that the verdict and judgment is excessive but a discussion of that issue would be profitless in view of that fact that, upon another trial, a different jury may assess a different amount for damages under the evidence offered in such trial.

The judgment should be reversed and the cause remanded for a new trial.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded for a new trial.

DEW, P. J., and CAVE, J., and FREDERICK H. MAUGHMER, Special Judge, concur.