**Francis C. CARPENTER, Appellant,**

v.

**Frances R. KESSNER, Respondent.**

No. 23035.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

W. M. Thurman, Winfred M. Thurman, Lucian Lane, Kansas City, for appellant.

Donald W. Johnson, Kansas City, for respondent.

HUNTER, Judge.

This suit for damages for personal injuries and property damage was the result of an intersection collision of the automobiles of appellant and respondent on the late afternoon of January 19, 1957, in the Country Club Plaza area of Kansas City at 47th Street and J. C. Nichols Parkway.

The single question presented on this appeal is whether the trial court erred in setting aside the verdict and judgment for appellant for $1,040.33 and, in accordance with respondent's motion for a directed verdict filed at the close of all the evidence, entering judgment for respondent for the assigned reason that appellant's own testimony revealed he was guilty of contributory negligence as a matter of law.

■ The rule is that the determination of whether a party is guilty of contributory negligence ordinarily is for the jury as within its function unless it can be said from all the evidence and the reasonable inferences therefrom viewed in the light most favorable to that party that the *only* reasonable conclusion is that he was negligent and that his negligence was a proximate cause of his injury. Evidence and inferences favorable to the other party (respondent) are disregarded in making the determination. Thompson v. Byers Transport Co., 362 Mo. 42, 239 S.W.2d 498; Kickham v. Carter, Mo.Sup., 314 S.W.2d 902.

■ Also, in deciding the question of contributory negligence as a matter of law, the general rule is that the party charged with contributory negligence is bound by his own testimony and may not be aided by other testimony conflicting with his testimony or with his basic theory of the case. Montgomery v. Petrus, Mo.App., 307 S.W. 2d 24, 27; Picarella v. Great Atlantic & Pacific Tea Co., Mo.App., 316 S.W.2d 642; Adkins v. Boss, Mo.Sup., 290 S.W.2d 139.

In accordance with these controlling principles we proceed to set out appellant's testimony and such other testimony as might properly aid him or explain the occurrence.

At the intersection 47th Street has six lanes. Three are to the north of its center line and are for the use of westbound traffic. The other three are to the south of its center line and are for the use of eastbound traffic. J. C. Nichols Parkway, which runs north and south, is about the same width as 47th Street at their intersection.

Appellant was travelling east on 47th Street within two feet of and south of the center line as he approached and entered the intersection. He intended to make a left-hand turn to the north.

Respondent was travelling west on 47th Street in the lane next to the north curb as she was approaching the intersection. The intersection was protected by traffic lights, and the green light was with both vehicles.

As to what next occurred, we turn to appellant's testimony upon which respondent relies as showing contributory negligence as a matter of law.

Forty-seventh Street is about 40 to 50 feet wide. Appellant's speed was "around ten miles" per hour. As he arrived at the west side of the intersection he had his blinker (left turn) lights on. He proceeded forward to the center of the intersection. He there noticed respondent's car approaching from the east. He could have stopped then before starting the left turn into respondent's pathway "but didn't feel he had to."

"Q. * * * In your opinion how far (was respondent) east of your automobile when you started to make a left turn? A. I would judge she was at least a hundred feet from me.

"Q. * * * how fast, in your opinion (was) she moving? A. Well, she must have been doing at least 35 miles per hour.

"The Court: No, you must give your opinion. * * * A. All right, I will say she was driving 35."

On cross-examination appellant further testified:

"Q. You had started your turn across the center lane and she was up there about a hundred feet? A. That is right.

"Q. Did you watch her to form any estimate as to her speed at that time? A. Yes, I did. * * *

"Q. You made an estimate at that time, did you? A. That is right.

"Q. And I believe you said awhile ago that your estimate was that she was going 35 miles an hour. A. That is right."

Appellant was then asked if he had not given his deposition on February 13, 1958, in which he was asked certain questions and gave certain answers set out below. He stated he had:

"Q. You looked at her and saw her coming before you began your turn. Did you form any judgment at that time as to her speed? A. Oh, I can't say that I did right at that particular instant. I seen I had sufficient time to make my turn."

"Now, you want to change that, do you, now, and say that you did estimate her speed and that it was 35 miles an hour? A. Well, when she hit my car as hard as she did she had to be going 35 miles an hour. * * *

"Q. On what do you base your estimate now that she was going 35 miles an hour, when in your deposition you said that you didn't form any estimate of her speed? A. Well, I am basing the opinion of this speed on how my car was hit.

"Q. Yes, not on what you saw? A. Well, it is hard to form an opinion when a car is coming towards you, just exactly how fast it is going.

"Q. Yes, and you didn't form any estimate at that time? A. I thought she was going slow enough that I could go ahead and make this turn."

Again, he testified, "Q. Now, at that time you could have stopped before you got into the path of her car, couldn't you? A. Not if she was travelling 35, no."

When asked if he continued to watch her he replied, "Well, you can kind of see a car that is coming from the corner of

your eyes." When she was "around" 20 feet away and he was practically through the intersection he realized she was going to hit his car so he speeded up to clear the intersection. All his car but the rear two feet had cleared the intersection and the impact occurred between the right front of her car and the right rear fender and (rear) bumper of his car. To get from the center of the street to the path of her car he moved "about 18 feet" and at the rate "right close to" 10 miles per hour. He could have stopped in that 18 feet.

Respondent testified she had just left a cocktail party and was in a hurry to get home. She was going to have a dinner party that evening. It was a foggy, drizzly day and the pavement was slick, muddy and wet. She had been having trouble with her brakes. She didn't know whether they were failing to take hold or whether it was the slick pavement. Her brakes were a little slack and needed adjustment. She was driving about 20 miles an hour. The speed limit there was 25 miles per hour. She didn't see his car until it had made the left turn and was headed completely north. It was "almost to the north side of the intersection" before she saw it. She thought he would either stop or get clear through the intersection before she got there. "When he was within a half a car's length, maybe a little more" she saw he wasn't going to stop. She got excited and put on her brakes. "I think I slid over to the curb." "I just didn't think * * * my brakes were going to hold and just slid into him."

There was other testimony that she said she didn't see him; that she came straight ahead and did not apply her brakes or slow her car down before hitting him.

Respondent contends appellant violated Section 304.021, subd. 3 RSMo 1949, V.A. M.S. That subsection reads: "3. The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

The essence of respondent's position is that appellant-plaintiff by his own testimony was fully aware of the approach of the on-coming vehicle and its speed and thus was contributorily negligent as a matter of law for proceeding with his left turn into its path when he knew it was so close as to constitute an immediate hazard.

The evidence is that appellant was within the intersection and had proceeded to the center of it while respondent was still a considerable distance east of the intersection. This leaves the question, "was respondent so close thereto as to constitute an immediate hazard?" If so, appellant had the statutory duty to yield the right of way to respondent, and, ordinarily, a failure to do so would be a failure to exercise the highest degree of care as required by law of the driver of a motor vehicle and would make appellant guilty of contributory negligence. If reasonable minds could not differ on this question then it becomes a matter of law for the court to decide but if reasonable minds could differ on it then it becomes a matter for the jury to decide under proper instructions by the court.

Each case must be ruled by its own particular facts. Because of the frequent closeness of the questions presented and the variety of facts to be considered comparisons between cases cited pro and con and the case in question are difficult and not particularly helpful or persuasive. .

In the case before us we do not agree with respondent that appellant's testimony and its favorable inferences, together with the other testimony favorable to him and not in conflict with his testimony or basic theory of the case are such that the only reasonable conclusion is that he violated the statute and was negligent. It is our view that reasonable minds could disagree as to whether appellant was guilty of con-

tributary negligence in undertaking the left turn under the particular circumstances existing.

It was after appellant not only had entered the intersection but had travelled half way across it and had reached the center of it and was about to turn left that he saw respondent's automobile "over 100 feet" to the east. The evidence is such that it would support a finding that this placed respondent's automobile some 80 feet east of the east curb line of J. C. Nichols Parkway. At that point appellant had to move only 20 to 25 feet north to clear the intersection. Respondent had to travel at least 80 feet to reach the intersection and an unstated additional number of feet to reach the point of impact. According to appellant's evidence there were no other cars or obstructions to respondent's vision.

A fair reading of all appellant's testimony and its favorable inferences concerning respondent's speed would not preclude the conclusion that he did not then know the exact speed at which respondent was approaching but thought it was such that he had enough time to safely make his left turn. It was only with the aid of the force of the impact that he was able to conclude that speed was 35 miles an hour. Respondent's testimony was that her speed was only 20 miles per hour. See, Picarella v. Great Atlantic & Pacific Tea Co., supra, 316 S.W. 2d 650(14); Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24; Pender v. Foeste, Mo.Sup., 329 S.W.2d 656.

 Additionally, appellant's evidence does not compel a finding that he knew or should have known respondent didn't see him until approximately the time of impact, and would not permit him to complete a turn he began while respondent was still some 80 feet east of the intersection. One about to make a turn usually has the right to act upon appearances and unless there is a reasonable indication to the contrary, to assume that the driver of the other approaching vehicle will not act negligently and will operate his vehicle in a prudent and lawful manner. Cooksey v. Ace Cab Co., Mo., 289 S.W.2d 40; Moore v. Southwestern Bell Telephone Co., Mo., Mo.Sup., 301 S.W.2d 817; Minnis v. William J. Lemp Brewing Co., Mo.App., 226 S.W. 999; Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, 459; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254. We are unwilling to say that appellant was guilty of contributory negligence as a matter of law in undertaking his left turn under the circumstances in evidence.

As to his conduct while making the left turn, again we cannot say he was negligent as a matter of law in what he did. The fact he kept respondent's car in the corner of his eye for the mentioned short time and did not realize an impact was imminent until respondent was just 20 feet away is a fact the jury could consider in determining contributory negligence. However, keeping in mind that he also had to keep his eye in other directions to watch for cars or pedestrians, we cannot say that this factor, either alone or combined with the other facts in evidence, was negligence as a matter of law. See Burke v. Renick, Mo.App., 249 S.W.2d 513, 516; Harding v. Peterson, Mo.App., 227 S.W.2d 88, 92.

Again, the circumstances are such that when he realized the danger of an immediate impact with respondent's car 20 feet away, and elected to speed up to avoid the collision rather than to try to put on his brakes we cannot say this was negligence as a matter of law. It must be remembered that appellant failed to clear the intersection by only two feet and this in the face of testimony that respondent never applied her brakes, or changed her speed or direction. For all we can tell from plaintiff's evidence, or for that matter, from any of the evidence, he did the most sensible thing *then* possible to avoid the collision.

Intersection collisions such as this frequently present close questions of fact in determining the presence or absence of negligence or contributory negligence. We

have endeavored to specifically mention and discuss those upon which respondent relies. We have considered them and also all the evidence which the law requires us to consider on the question of contributory negligence as a matter of law. As stated earlier, we are unwilling to rule that reasonable minds could only conclude therefrom that plaintiff was contributorily negligent. Rather, we hold that the evidence was such that the matter was one properly for the jury.

We have examined Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, and respondent's other cited cases. While there are some similarities there are also substantial differences in the facts sufficient to cause them not to be controlling in the instant case.

The trial court did not err in submitting the issue of appellant's contributory negligence to the jury, and the jury's verdict should be reinstated.

This case is reversed and remanded with directions to reinstate the verdict of the jury and to enter judgment accordingly. It is so ordered.

All concur.