Bruce E. MYERS, Respondent,

v.

William L. SEARCY, Appellant.

No. 48720.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied April 9, 1962.

Hilary A. Bush, Paul E. Vardeman, Jr., Johnson, Lucas, Bush & Vardeman, Kansas City, for appellant.

Robert I. Adelman, Kansas City, for respondent.

HOLMAN, Commissioner.

Plaintiff instituted this action in an effort to recover damages for personal injuries in the sum of $50,000. The trial resulted in a verdict for the defendant. Thereafter, the trial court entered an order sustaining plaintiff's motion for new trial on the sole ground that the court erred in giving Instruction No. 4 at the request of the defendant. Defendant has appealed from that order.

The collision in question occurred at about 6:30 a. m. on January 21, 1959 in the northeast quadrant of the intersection of 63rd and Benton Streets in Kansas City, Missouri. It was snowing at that time and the streets were snow-packed and rather slick. It was dark enough that all of the cars herein mentioned were using their lights. The cars involved were going

eastwardly on 63rd which was 40 feet wide and slightly upgrade at that point. Plaintiff intended to make a left turn in order to go north on South Benton. His car was followed closely by a Chevrolet car driven by Robert Clay. Defendant's car was behind the cars of plaintiff and Clay. As the cars neared South Benton defendant pulled his car to the left and started to pass the other two cars. At that time plaintiff began his left turn into South Benton and defendant was unable to stop his car until after it had collided with the left door of plaintiff's automobile.

Plaintiff testified that his car was in excellent condition and was equipped with snow tires and traction drive; that his left-turn directional light had been operating for approximately a half block before he arrived at South Benton; that the left side of his car was approximately on the center line of 63rd Street and his car was being followed by a Chevrolet; that when his car arrived at the intersection he came almost to a dead stop in order to permit a bus and a car going westwardly to clear the intersection; that he then gave a left-turn hand signal and started his left turn; that when he had made about a third of his turn he saw approaching headlights in his outside rear-view mirror; that he then jammed on his brake and stopped but the approaching car collided with the center of the door of his car; that before starting his turn he had looked to the rear or glanced in the rear-view mirrors and had seen only the Chevrolet car behind him; that his automobile had proceeded from 2½ to 4 feet north of the center line by the time he saw defendant's headlights and he then stopped in one foot; that the point of impact was on the center line of the street.

Robert Clay testified that he was driving behind plaintiff's car and had the chains on his car; that he was following at a slow pace and as the cars neared South Benton plaintiff's left-turn signal light was operating but he didn't see plaintiff give an arm signal; that he had not noticed defendant's car until it started around his

car; that he didn't recall hearing a signal from defendant's car; that when the front end of defendant's car was even with his (Clay's) rear fender plaintiff started his left turn; that when defendant applied his brakes his car slid a little to the left; that defendant tried to stop but it was so slippery there wasn't much that could be done and he struck plaintiff's car in the northeast quadrant of the intersection; that although it was snowing a person could see at that time for a block or a block and a half; that he didn't believe plaintiff's car stopped at the intersection before starting its left turn; that defendant's car was going about 25 m. p. h. at the time he first noticed it.

Defendant testified that on the morning in question his car was equipped with snow tires and he also had on chains; that as he approached South Benton he saw the Clay and Myers cars ahead of him and thought they were stalled; that he didn't want to stop on the hill so he pulled to the left, sounded his horn, and started around them; that when the front of his car was even with the rear fender of the Clay car he saw plaintiff start his left turn and he (defendant) sounded his horn, put on his brake, and pulled to the left hoping to pass to the left of plaintiff's car, but plaintiff failed to slacken his speed at all and the cars collided; · that at the time he started to pass, the cars of Clay and plaintiff were about six feet to the right of the center line and there wasn't sufficient room to safely pass them on the right; that plaintiff did not give an arm signal and the glass was up in his left door; that he was about 50 feet from plaintiff's car at the time it started the left turn and a person could see for a block at that time; that his car was going about 20 m. p. h. when he turned out to pass; that he saw the tail-lights on plaintiff's car but did not see any turn indicator flashing.

Plaintiff's case was submitted to the jury upon the hypothesized acts of defendant in turning his car to the left side of 63rd Street and attempting to pass plaintiff's

**62**

car within 100 feet of the intersection. See Section 304.016, subd. 4(2) RSMo 1959, V. A.M.S. As we have indicated, the trial court granted a new trial because of error in giving Instruction No. 4 which reads as follows: "The court instructs the jury that it was the duty of plaintiff to exercise the highest degree of care to keep a lookout to avoid turning into the path of other vehicles being operated on 63rd Street. Therefore, if you find and believe from the evidence that the plaintiff saw or by the exercise of the highest degree of care could have seen defendant's automobile approaching and passing, if so, in time to have stopped his automobile and thereby have avoided the collision, if so, but that plaintiff negligently failed so to do and if such negligence directly caused or directly contributed to cause the collision, if so, then your verdict must be for the defendant."

■ Plaintiff did not make any specific objections to Instruction No. 4 at the trial. Defendant has briefed the contention that the objections to this instruction contained in plaintiff's motion for new trial are not sufficiently specific to preserve anything for review. See S.C. Rules 70.02 and 79.03, V.A.M.R. Plaintiff, in his brief, has specified three respects in which he says the instruction was erroneous. We have examined the motion and have decided that it contains specifications of error in regard to said instruction which are sufficient to warrant a review of the three contentions briefed by plaintiff.

■ The instruction in question is somewhat unusual. No case has been cited, and we have found none, in which a similar instruction has been given. Its underlying theory would appear to be the failure of plaintiff to keep a proper lookout, but it will be noted that the instruction does not expressly submit failure to keep a lookout. Also, it did not submit plaintiff's failure to give a reasonably adequate and timely warning of his intention to make a left turn, a submission often given in cases of this

nature. However, it is not necessary to its validity that an instruction be so worded that it will fall into a particular classification. In determining the validity of this instruction we will bear in mind that "Instructions on contributory negligence should require findings that plaintiff was guilty of the act of commission or omission attributed to plaintiff; that such conduct constituted negligence on plaintiff's part, and that this negligence of plaintiff, if any, directly contributed to plaintiff's injury; that is, plaintiff's negligence entered into and formed a part of the direct, producing or efficient cause of the injury, without which the casualty would not have happened." Danner v. Weinreich, Mo.Sup., 323 S.W.2d 746, 750.

The first contention of plaintiff is that the instruction is erroneous because it placed a duty upon him which, under the law, he was not required to perform. It is said that defendant was violating the statute in passing at that place and that plaintiff had a right to assume that the law would not be violated and hence was under no duty to keep a lookout for such a vehicle.

■ We think plaintiff was under a duty to keep a lookout under the circumstances here shown. "The driver of a motor vehicle has the duty to keep a proper lookout and to watch where he is driving, * * * and his failure to do so is negligence, which will prevent his recovery for injuries sustained as a result thereof, even though the other person is also at fault. * * * [A] motorist intending to make a left turn at an intersection must see to it that the movement can be made in safety, that there is sufficient space for the turn to be so made, and that the turn can be made without danger to normal overtaking or oncoming traffic; and he must accordingly proceed with caution and take care to avoid collisions with other vehicles. * * * The driver contemplating a left turn must keep a vigilant lookout for approaching vehicles, and also for

vehicles which may be following him." 60 C.J.S. Motor Vehicles § 284(a), pp. 661, 662, and § 367(c), (1), pp. 908, 909. See also Auckley v. Robbins, La.App., 45 So.2d 380. In this connection we have also recently said that "An operator of an automobile on a public highway cannot assume that another automobile would not be present on the highway under circumstances that would be in violation of the rules of the road and for that reason not maintain the continuous lookout required of drivers." Pitts v. Garner, Mo.Sup., 321 S.W.2d 509, 518. We accordingly rule plaintiff's first contention adversely to him.

■ Plaintiff's second contention of error in regard to said instruction is that it is contrary to all the evidence in the case. Perhaps that should be considered as a contention that there was no evidence to support the submission. We think there was ample evidence to support this instruction. There was evidence that when plaintiff started his left turn defendant's car was already on the left side of the street and about 50 feet to the rear. If plaintiff had looked at that time he could have seen defendant's car passing the car driven by Clay and plaintiff could then have stopped his automobile and thus have avoided the collision. His own testimony was to the effect that he did stop his car in a distance of one foot when he actually did see defendant's headlights. This point is accordingly overruled.

■ The third contention of plaintiff is that the instruction was reversibly erroneous because it failed to hypothesize any facts which would entitle defendant to a verdict. He cites the case of Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, wherein we held a sole cause instruction to be reversibly erroneous because it did not hypothesize the facts showing a sole cause situation. Many similar cases could be cited. However, in the case before us we think the instruction did hypothesize the facts essential to a defendant's verdict. It required a finding that plaintiff saw or could have seen defendant's car approaching in time to have stopped his automobile and thereby have avoided the collision. These facts, together with a finding of negligence and causation, were all that needed to be found in order to entitle defendant to a verdict. It is true that other evidentiary facts concerning the physical surroundings and the location and movement of the cars could have been hypothesized. However, the factual situation involved was simple and there was very little conflict in the evidence concerning the physical surroundings and the location and movement of the cars shortly before the collision. In that situation, it was sufficient to hypothesize only the essential ultimate facts as was done in the instruction under review. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496.

For the reasons heretofore stated, we rule that Instruction No. 4 was not prejudicially erroneous in any of the respects specified in plaintiff's motion for new trial and thereafter developed in his brief. It follows that the trial court erred in granting plaintiff a new trial on the basis of error committed in the giving of that instruction.

■ Plaintiff also contends that a new trial was properly granted in this case for reasons not specified by the trial court. He points to alleged erroneous rulings in connection with his examination and cross-examination of two witnesses who testified concerning plaintiff's injuries. We need not determine the merits of those contentions. The rulings complained of would only affect the amount of plaintiff's verdict in the event he prevailed on the issue of defendant's liability. Since the verdict was for the defendant as to liability the jury did not reach the question concerning the amount of plaintiff's damages. It follows that plaintiff could not have been prejudiced by these alleged errors. Russell v. Kotsch, Mo.Sup., 336 S.W.2d 405.

The order granting a new trial is reversed and the cause is remanded with directions to the trial court to reinstate the verdict of the jury and enter judgment thereon in favor of the defendant.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.