Michael MILLER, a Minor, by Milton Miller,
Jr., His Natural Parent and Next
Friend, Respondent,

v.

Marvin GREIS and Chester Arthur Allen,
Appellants.

No. 51178.

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

Spencer, Hines & Petri, Columbia, for
respondent.

J. Turner Jones, Columbia, for appellants,
Welliver, Porter & Cleaveland, Columbia,
of counsel.

HOUSER, Commissioner.

This is an action for damages for personal injuries, loss of earnings, medical expenses, etc., brought by 17-year-old Michael Miller, pro ami, arising out of an intersectional collision between an Oldsmobile sedan Miller was driving and a dump truck owned by defendant Greis and driven by defendant Allen. A trial jury returned a verdict for plaintiff and against both defendants for $16,500. From the judgment entered upon the verdict both defendants have appealed.

Defendants' first point is that the court erred in not directing a verdict for defendants at the close of the evidence because the evidence demonstrates that plaintiff was guilty of contributory negligence as a matter of law for (1) failure to maintain a lookout and (2) failure to yield the right of way in making a left turn into the path of the approaching dump truck which it is alleged was plainly visible and so close to the intersection as to constitute an immediate hazard.

The collision occurred at 9 a. m. on a clear, sunshiny August day in the northwest quadrant of the intersection of Providence Road, a north-south street, and Old High-

way 40 (an east-west thoroughfare), in Columbia. Greis' southbound dump truck collided with the Oldsmobile after the Oldsmobile, which had been proceeding north, turned left at the intersection to go west.

Providence Road north of the intersection is a 24-foot, 2-lane pavement; south of the intersection it broadens into a 50-foot, 4-lane trafficway. As the traveler comes south on Providence Road he experiences a slight rise for about 500 feet as he approaches Old Highway 40, then at a point 75 or 100 feet south of Old Highway 40 there is a "very good slope," "a steep grade," something like a 10% grade for two blocks or 300 feet as one goes on south. A southbound driver can see the intersection a half mile away. A northbound driver at the intersection can see the pavement of Providence Road for a half mile to the north. Old Highway 40 is a 24-foot, 2-lane pavement. A red-green-amber electric light controls traffic at the intersection. It hangs over the center of the intersection.

From the evidence most favorable to the prevailing party the jury could have found the following facts: Miller, driving the Oldsmobile, approached the intersection from the south, intending to turn to his left or west. He drove on the inside lane of the two northbound lanes of Providence Road. As Miller approached the intersection the green light turned amber and then red. Miller stopped in the inside lane; turned on the blinking left-hand turn signal light on the Oldsmobile about the same time he stopped; saw cars going east and west on Old Highway 40; saw an automobile coming south toward the intersection followed by the dump truck in question, which was loaded with rock, traveling at a speed not estimated by Miller (he had no judgment on that matter) but which according to other evidence was normal, "not excessive," 15 or 20 m. p. h. When Miller first saw the truck it was 300 feet north of the intersection. Miller may have noticed the truck in the meantime but had no specific recollection of the truck after he first saw it until just before the collision. He did note that it was "some distance away" and that he

(Miller) "had time to turn." Miller did not move the Oldsmobile until the light turned green, at which time Miller moved the Oldsmobile out into the intersection. Some cars were still coming toward the intersection from the west. Miller waited awhile in the intersection to make sure this cross traffic was going to stop and to see what the southbound car on Providence Road was going to do. The eastbound traffic stopped, and the left-turn signal on the southbound car was turned on. As soon as Miller saw that the southbound car was going to turn left Miller proceeded to make his left turn. The truck was 2 or 3 car lengths (28 to 42 feet) north of the southbound automobile when Miller turned left. As Miller "almost got headed west" Miller saw the truck, which was then only a short distance away—less than 10 feet—"practically on top" of Miller. The collision occurred "practically at the same time" Miller saw the truck the second time.

Allen, driving the 1959 GMC dump truck, which was approaching the intersection from the north, came up the slight incline and first observed the Oldsmobile stopped in the inside northbound lane in a position to make a left-hand turn when Allen's truck was "a little ways" north of the intersection. Allen's truck then was "practically on Old 40." Although there was a southbound automobile "a couple of car lengths or so" in front of the truck, after the light had turned green, Allen failed to see this southbound automobile. Allen was watching the traffic light. As he approached the intersection he was "holding back, laying back a little bit on the grade until the light turned green." When the light turned green Allen accelerated his speed to "make" the steep grade on the other side of Old Highway 40. The traffic light was green when he entered the intersection. The Oldsmobile began to move out to make a left turn and "came around with a swing." As the truck approached the intersection it was either half on and half off the concrete pavement or maybe just the width of the tires off the pavement, and was creating dust on the shoulder. Allen told a police officer after

the collision that he was "almost certain" that he could not have stopped and that he tried to miss the Oldsmobile by using his steering wheel. Allen testified that he gripped his steering wheel to get a firm hold to try to miss the car and then cut to the right in an attempt to avoid a collision. The truck was in good mechanical condition and the truck brakes worked properly. Allen testified that at the speed the truck was traveling he could stop the dump truck in 10 to 15 feet on dry pavement. Although Allen testified that he applied the brakes full force and that the truck left skid marks 10 or 15 feet long, he testified in his deposition that no skid marks were made. A police officer who appeared at the scene of the collision testified that the truck did not leave any skid marks. Allen testified that he did not steer to his left because that would have caused the truck to "practically hit [the Oldsmobile] head on" and did not sound a horn because he wanted to get a firm grip on the steering wheel and in touching the horn in the center of the wheel he might have lost control of the truck completely.

The truck was headed southwest, more west than south, at the time of the collision. Substantially all of the Oldsmobile had reached the north half of the Old Highway 40 pavement at the time of impact. When the collision occurred the Oldsmobile, traveling 10–15 m. p. h., was 28 to 42 feet west of the center line of Providence Road and a foot or two north of the center line of Old Highway 40, with perhaps a few inches of the Oldsmobile "still sticking over the line." The debris from the impact was deposited near the center line of Old Highway 40. The front end of the truck collided with the right front side of the Oldsmobile. The impact pushed the Oldsmobile in a sideways or southwest direction from 10 to 20 feet. It came to a stop 5 feet from the south curb

of Old Highway 40, headed northwest, perhaps not quite a car length (14 feet) west of the west curb line (extended) of Providence Road.

■ Was Miller contributorily negligent as a matter of law in not maintaining a lookout and in failing to yield the right of way to the approaching truck and in making a left turn into its path? We have examined the case cited and others in which drivers in intersectional collisions have been adjudged guilty of contributory negligence as a matter of law.[1] We recognize the rules relied upon by defendants, namely, that it is the duty of one in Miller's seat to have maintained a continuous lookout[2] for and to have made a reasonably careful observation of approaching traffic to have seen what looking would have revealed, and to have exercised due diligence in estimating the distance away and speed of an approaching vehicle[3]; that a driver in such position cannot relax his continuous lookout duty by assuming that the driver of the other vehicle would not be present on the highway under circumstances that would be in violation of the rules of the road,[4] and that the failure on the part of a plaintiff, where a lookout duty exists, to see what is plainly visible when he looks constitutes contributory negligence as a matter of law.[5] Under given circumstances a mere glance may be sufficient to reveal the presence of a vehicle and the knowledge thereby imparted may enable one to avoid a collision.[6] A consideration of the foregoing rules, however, does not necessarily require a finding of contributory negligence as a matter of law in this case. A reasonable argument can be made that Miller, having seen the truck when the truck was 300 feet north of the intersection and having knowledge of its approach, moved the Oldsmobile into its path at a time when the truck was so close

1. Payne v. Smith, Mo.Sup., 322 S.W.2d 764; Davis v. Quality Oil Co., Mo.Sup., 353 S.W.2d 670.

2. Faught v. Washam, 365 Mo. 1021, 291 S.W.2d 78.

3. Burton v. Moulder, Mo.Sup., 245 S.W.2d 844.

4. Myers v. Searcy, Mo.Sup., 356 S.W.2d 59.

5. Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626.

6. Folluo v. Gray, Mo.App., 256 S.W.2d 273.

to the intersection as to constitute an immediate hazard "without ever bothering to again ascertain the progress, position, and movement of the defendant's truck," thereby causing an otherwise avoidable collision. A jury, however, could reasonably make a contrary finding on the evidence in this case.

Miller, sitting in the Oldsmobile which he had stopped next to the center line of Providence Road, saw the southbound truck 300 feet north of the intersection, following another southbound vehicle. If we charge Miller with a continuous lookout duty from that moment forward it could reasonably be found that Miller could have observed the truck traveling toward the intersection at the speed of 15 to 20 m. p. h., "holding back" on its speed; that thereupon Miller drove out into the intersection and stopped; that Miller, intending to turn left, was entitled to act upon appearances, Carpenter v. Kessner, Mo.App., 330 S.W.2d 270, 274; that it reasonably appeared to him that the truck would stay in its proper lane and proceed normally at a reasonable speed behind the other southbound vehicle until the truck reached the intersection; that Miller was not bound to anticipate that the truck would accelerate its speed and change its course as it came nearer, and drive out of the southbound lane onto the shoulder and run into Miller's vehicle at a point two or three car lengths west of the center line of Providence Road; that when the leading southbound vehicle signaled a left turn Miller started his left turn; that the truck at that time was north of the Oldsmobile a distance of 42 feet plus the width of the north half of Old Highway 40, plus the length of the other southbound vehicle, and that considering the truck's speed at that time, the nearness of the Oldsmobile to the center line of Providence Road, and the short distance the Oldsmobile had to travel to clear the expected path of the oncoming southbound truck, there was time and space for Miller to execute his left turn without apparent danger of collision. There was evidence from which the jury could have found that there would have been no collision if Allen had been looking at something other than the traffic light,[7] had stayed in his lane, and had not sped up to "make" the steep grade ahead. Miller was not bound to wait for both southbound vehicles to pass before turning. He was not duty bound in all events to wait for the southbound truck to pass by on his left side before turning. Whether he could safely execute the left turn depended upon the speed of the truck and its distance away. In making his calculations Miller did not have to anticipate that due to some unexpected acceleration of the truck the paths of the vehicles would cross. Burton v. Moulder, Mo.Sup., 245 S.W.2d 844, 846 [5]. Normal oncoming traffic (and speed) was all that he was obliged to anticipate. Myers v. Searcy, Mo.Sup., 356 S.W.2d 59, 62. The question of contributory negligence of Miller was properly left to the jury to determine.

The court gave Instruction No. 1, the relevant portions of which follow:

" * * * if you find and believe from the evidence that on August 14, 1962, at about 9:00 a. m., the plaintiff Michael Miller was operating a 1957 Oldsmobile automobile in a northerly direction on Providence Road, Boone County, Missouri, and had turned said vehicle in a westerly direction at the intersection of Providence Road and U. S. Business Loop 70, Columbia, Missouri, and if you further find and believe from the evidence that at the time and place mentioned in the evidence the defendant Chester Arthur Allen was driving a 1959 GMC truck in a southerly direction along said Providence Road approaching and entering the intersection with U. S. Business Loop 70; and if you further find and believe from the evidence that as said defendant Allen entered said intersection he failed to maintain an adequate and careful lookout ahead of said truck, and that the defendant was operating said truck at a high and dangerous rate of speed under

---

7. (He was oblivious of the southbound vehicle preceding him, oblivious of the other traffic, and oblivious of the Oldsmobile until just before the collision.)

the circumstances then and there existing, and if you find that defendant failed to slow or slacken the speed of said truck or give warning of his approach, to enable plaintiff to remove himself from the path of said truck, and that in so doing defendant Allen failed to exercise the highest degree of care and was guilty of negligence, * * *."

Defendants' second point challenges the sufficiency of the evidence to support the giving of Instruction No. 1. We will not elaborate the positions of the parties or our reasons for concluding that the evidence was sufficient, since the judgment must be reversed for the error in the instruction pointed out by defendants in their third point.

Instruction No. 1 erroneously authorizes a verdict for plaintiff based upon defendants' failure to slow or slacken the speed of the truck or to warn of its approach, without requiring a finding of the basic fact that there was apparent danger of collision. The instruction hypothesized a factual situation in which plaintiff's northbound Oldsmobile turned in a westerly direction at an intersection; defendants' southbound truck was approaching and entering the intersection, and the Oldsmobile was in the path of the truck. The instruction assumed the existence of a duty on the part of the truck driver under this hypothesis to slow or slacken the speed of the truck or give warning of its approach, to enable the driver of the Oldsmobile to remove himself from the path of the truck. No such duty exists upon this bare framework of facts; no duty to take the precautions hypothesized *unless there was apparent danger of a collision.* The law does not impose upon the driver of a vehicle approaching and entering an intersection in which a vehicle is in its path the duty to slow down or issue a warning unless the use of the highest degree of care upon his part would lead him to believe that otherwise a collision would occur. He is not obliged to slacken speed or warn merely because he sees another automobile in the street ahead of him. There must be apparent danger of collision before he is required to act, and time thereafter to effectively take preventive action in avoidance. This fundamental factual basis for the existence of the duty was wholly omitted from the required findings. A finding that defendant Allen knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed and sounded a warning but failed to do so should have been incorporated in the verdict-directing instruction. M.A.I. No. 17.04.

This rule stems from Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577, which has been followed consistently [8] and recognized by this court en banc as late as April 12, 1965. Mullen v. St. Louis Public Service Co., Mo.Sup., 389 S.W.2d 838. While there are cases approving instructions omitting a specific finding of apparent danger,[9] upon examination it will be discovered that in each of them an inherently dangerous situation was sufficiently hypothesized to raise a duty to act. Such differentiating circumstances do not exist in the present situation.

Since there must be a new trial we need not state and elaborate on the point that the court erred in giving Instruction No. 3 on the measure of damages. On a new trial, however, the plaintiff would be well advised to give the matter serious consideration before submitting an instruction authorizing the jury to award damages for

8. Rosenkoetter v. Fleer, Mo.Sup., 155 S.W.2d 157, 159; DeVoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66, 72–73; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, 114; Rayburn v. Fricke, Mo.App., 243 S.W.2d 768; Burke v. Renick, Mo.App., 249 S.W.2d 513, 517; Douglas v. Whitledge, Mo. App., 302 S.W.2d 294, 303; Nydegger v. Mason, Mo.Sup., 315 S.W.2d 816 [3].

9. Taylor v. Alexander, Mo.Sup., 283 S.W. 2d 588, 590–591; Witt v. Peterson, Mo. Sup., 310 S.W.2d 857, 861; DeVoto v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 355; Litt v. Allen, Mo.App., 313 S.W.2d 183.

permanent injuries, if the evidence of damage is substantially the same, or to award this minor plaintiff damages for loss of earnings and medical expenses.

A discussion of the request for a remittitur is inappropriate in view of the necessity for a new trial.

Judgment reversed and cause remanded for a new trial.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.