**Eleanor HENRY, Plaintiff-Respondent,**

**v.**

**Albert BAKER, Defendant-Appellant.**

**No. 24607.**

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 1967.

Application to Transfer Denied Nov. 13, 1967.

Terence C. Porter, Welliver, Porter & Cleaveland, Columbia, for appellant.

Carl F. Sapp, Orr, Sapp & Woods, Columbia, for respondent.

SPERRY, Commissioner.

Plaintiff is the surviving spouse of John Henry, who was killed when the automobile which he was operating collided with an automobile being operated by defendant, Albert Baker. This action is one for the wrongful death of Mr. Henry. From a jury verdict for $10,000.00 damages, and the judgment thereon, defendant appeals.

The collision occurred within the T intersection of Victoria Lane and Boone County, Missouri, route K, within the limits of Columbia, Missouri. Route K is a thirty two feet wide, north-south, two lane asphalt highway. Victoria is a gravelled road running east off of route K. There was a light mist falling and the surface of route K was wet. Deceased was proceeding south on route K, approaching Victoria, where he would then turn east two blocks to his home. Defendant was proceeding northward on route K, near the intersection. The accident occurred at about noon February 6th, 1965.

Mr. Roe testified to the effect that he was a photographer for the police depart-

ment of Columbia. He identified Exhibits as pictures which he took of the highway near the scene of the collision, shortly thereafter. Exhibit 2 depicts the city limit sign, on highway K, taken from a point fifty feet south thereof, with the camera pointed north. The speed limit is clearly shown as forty five miles per hour. The witness stated that the sign could be seen from a point four tenths of a mile south, by speedometer measurement. One picture, taken from a point two hundred fifty feet south of Victoria, looking north along highway K, shows an automobile making a left turn into Victoria. The witness stated that the drivers of each of two cars, similarly located, could have seen each other; but this picture was taken on a clear day.

An ordinance, introduced in evidence, provides a speed limit of forty five miles per hour at the points material to this law suit.

Pictures of the two cars, at the scene of the accident, were in evidence. The entire fronts of both vehicles were damaged. Plaintiff's medical Exhibit 15 contains a list of seventeen separate and serious injuries received by deceased, from which he died, February 18th, 1965. Since no question of the excessiveness of the judgment is presented we will not set out further medical evidence.

Deceased's son stated that he was the second to arrive at the scene of the collision; that deceased was seated behind the steering wheel, in his car; that the steering wheel was broken from the column; that the door was open and jammed; that deceased's car was on its side of the roadway but was crosswise with the line of traffic; that the entire front of the car had received the blow; that the debris was in the center of the highway; that the deceased's leg was broken and the right knee bone protruded through the skin and clothing.

Mr. Russell, an employee of defendant at the time of the accident, stated that he was riding in the right front seat of the Baker car when the collision occurred; that the car was travelling at fifty to fifty five miles per hour as it approached the intersection; that his estimate of speed was based on the rapidity with which fixed objects were passed; that he was from two hundred to two hundred fifty feet from the Henry car when he first saw it coming south in the west traffic lane of K, about one foot west of the center line; that when the collision occurred, it was about one foot east of the center line; that, from the time he first saw it, deceased's car travelled from west to east three or some three and one half feet during that time; that it had travelled a total distance of from eighteen to twenty feet from the time he first saw it until the collision occurred; that it was travelling at a speed of six or seven miles per hour; that, during that time, defendant's car travelled from two hundred to two hundred fifty feet; that defendant did not attempt to swerve his car and gave no signal; that, during this period of time, defendant was talking to witness about his clothing and was, from time to time, looking at witness; that, when he first saw it, deceased's car was "starting" to move left; that the bumper was the only part of the car that was east of the center line when the collision occurred; that there was room to swerve the defendant's car, either right or left, and thereby avoid the collision; that defendant could also have swerved left onto a side road; that deceased's car was still moving when it was struck; that defendant applied the brakes hard when about ninety feet south of deceased; that the front bumper of deceased's car had moved across the line at that time; that defendant's car skidded in its line of traffic, and almost turned around. On cross examination the witness gave some testimony that appeared to be confusing as to distances but, on redirect, he repeated that the distance between the cars when he first saw deceased's car approaching was two hundred to two hundred fifty feet.

There was testimony from a graduate in engineering mechanics to the effect that,

if car No. 1 travelled eighteen feet at seven miles per hour, while car No. 2 travelled one hundred eighty two feet, then car No. 2 travelled at the rate of seventy one miles per hour; that, if car No. 1 travelled twenty feet while car No. 2 travelled two hundred feet, then No. 2 travelled at a speed of sixty nine miles per hour; and if No. 1 moved twenty feet while No. 2 moved two hundred feet, then No. 2 travelled at the rate of sixty three miles per hour. The witness testified as to other speeds applicable under the testimony in this case, from which the jury could have found that defendant's car was travelling, prior to the collision, at a speed of from fifty four to ninety one miles per hour.

Police officer Antimi stated that, when he arrived at the scene, neither car had been moved since the collision; that defendant's car was twenty nine feet north of Victoria, headed west; that deceased's car was sitting east-west, with the front bumper twenty four feet east of the west edge of the pavement of K; that the cars hit "a little more head-on" and that both moved several feet after the collision occurred.

Defendant stated that his speed was less than forty five miles per hour as he approached Victoria; that plaintiff's car made a sudden left turn in front of him, with no warning; that defendant immediately applied his brakes; that his car went to the east side of K, spun around, and hit deceased's car "just as it was approaching Victoria". On cross examination defendant stated that a moving car would travel, in feet, one and one half times its speed per mile, per second; that defendant's car travelled eighty feet after he saw deceased's car before the collision; that his windshield wipers were on. He admitted that he had been convicted of a crime involving fraud and deceit.

Plaintiff produced four witnesses, substantial citizens, who stated that defend-

ant's reputation for truth and veracity was bad.

The case was submitted on the issues of defendant's negligence in failing to keep a careful lookout, failing to slacken speed and swerve, and operating his motor vehicle at a speed in excess of forty five miles per hour in violation of the ordinance. Defendant submitted contributory negligence of plaintiff, because of his failure to keep a careful lookout, and failure to yield the right of way.

Defendant contends here that his motion for directed verdict at the close of evidence should have been sustained because plaintiff was guilty of contributory negligence as a matter of law for failure to maintain a lookout and failure to yield the right of way in making a left turn into the path of an approaching vehicle, plainly visible and so close as to constitute an immediate hazard. The duty of the driver of a vehicle within an intersection, and intending to turn left is to yield to a vehicle approaching from the opposite direction, which is within the intersection or so close thereto as to constitute an immediate hazard. Sec. 304.021(3), RSMo 1959, V.A.M.S. It is the duty of the operator of a motor vehicle to exercise the highest degree of care on the public streets and highways and keep a continuous and careful lookout for other vehicles operating thereon. Faught v. Washam, 365 Mo. 1021, 291 S.W. 2d 78, 82. Other cases in point on the nature of the lookout that is required are the following: Burton v. Moulder, Mo., 245 S.W.2d 844, 846; Branscum v. Glaser, Mo., 234 S.W.2d 626, 627.

Before deceased turned left into the north traffic lane, within the intersection, he was required to look and to see what looking would have disclosed. Branscum v. Glaser, supra. Under the evidence most favorable to plaintiff, deceased at that time saw or could have seen defendant's car travelling toward the intersection, from

two hundred to two hundred fifty feet south of him. Deceased was then travelling at a speed of six or seven miles per hour. He travelled some eighteen or twenty feet before the collision occurred. The evidence was to the effect that his speed slowed as he approached the point where his front bumper crossed over into the north bound traffic lane, and that the front of defendant's car struck deceased's bumper when it was about a foot over the center line. From these facts the jury could have believed that deceased had slowed to almost a stop, in order to permit defendant to pass in front of him; that he did not block defendant's lane of traffic and that he did not violate the statute mentioned. Mr. Russell stated that there was room to permit defendant's passage. The roadway was thirty two feet wide, thus leaving fifteen feet of roadway east of the center line, when the collision occurred, which defendant could have used. The jury might also have believed that plaintiff was justified in believing that a car two hundred feet south of him did not constitute a hazard. Miller v. Greis, Mo., 396 S.W.2d 642, 644–645.

■ We must accept as true all evidence favorable to plaintiff's right to recover, and we must draw all reasonable and favorable inferences therefrom. With that rule in mind we cannot say that, under the facts here, reasonable minds cannot differ but must agree that deceased was guilty of contributory negligence as a matter of law. Carpenter v. Kessner, Mo. App., 330 S.W.2d 270, 273(3–4). The court properly submitted that issue to the jury. Carpenter v. Kessner, supra.

■ Defendant also urges that plaintiff did not make a submissible case of primary negligence. Based on what we have previously said this contention needs little comment. In Downing v. Dixon, Mo., 313 S.W.2d 644, 650, the court said:

"It has been stated many times that the violation of a statute or ordinance is negligence per se (Rice v. Allen, Mo., 309 S.W.2d 629, 631, and cases there cited; Harper & James, Torts, Vol. 2, § 17.6, p. 997; Prosser on Torts, 2nd Ed., § 34, p. 161); but it is also well settled that the violation must be shown to have been the proximate cause of the injury. Lochmoeller v. Kiel, Mo.App., 137 S.W. 2d 625; Smyth v. Hertz Driv-Ur-Self Stations, Mo.App., 93 S.W.2d 56; Larsen v. Webb, 332 Mo. 370, 58 S.W.2d 967, 970; 90 A.L.R. 67".

■ Plaintiff submitted excessive speed in violation of the forty five mile speed limit ordinance of Columbia. There was positive testimony from witness Russell to the effect that defendant's speed, when from two hundred to two hundred fifty feet from deceased who then began turning left, was from fifty to fifty five miles per hour. All of the eye witness testimony fixed deceased's speed at from six to seven miles per hour at that time, slower later. The engineer witness stated that, based on deceased's speed as stated, and upon defendant's distance south at that time, defendant's speed was in excess of seventy miles per hour. All of the evidence was to the effect that it was misty and that the asphalt road surface was coated with dirt and water. The evidence was that defendant's car skidded when he applied his brakes. From this testimony the jury could have believed that defendant's speed was the proximate cause of the collision. There was testimony from Mr. Russell to the effect that defendant, immediately prior to the accident, had been talking to and looking at witness. The jury could have believed that defendant failed to keep a proper lookout. Defendant said that he applied his brakes when he first saw deceased, when he was ninety feet south of deceased's car. From the testimony of Russell he could have seen deceased when he was two hundred feet south so that he

could have slackened his speed and could have swerved. The jury could have found that, by his swerving, defendant could have avoided the collision.

Defendant's second contention is adversely ruled.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. All concur.